LYNCH, Appellant, vs. RYAN and wife, Respondents.

*April 16—June 20, 1907.*

*Mortgages: Equity of redemption: Extinguishment: Conveyance to mortgagee: Trusts and trustees: Execution of oral trust: Appeal: Motion for rehearing: Disrespectful brief.*

1. Where the relation of mortgagor and mortgagee has been once established and it is claimed that by a subsequent deed of the premises by the mortgagor to the mortgagee the equity of redemption has been extinguished and the mortgagee has become the absolute owner, it must be clearly shown that the conveyance or release was voluntary, was based on adequate consideration, was untainted by fraud, and that no advantage was taken of the debtor's necessities to drive a hard bargain. In doubtful cases the court will incline to hold that the mortgage relation still exists.

2. The evidence in this case is *held* insufficient to sustain a finding that a conveyance of mortgaged premises to the mortgagee extinguished the equity of redemption.

3. A mortgagor cannot gratuitously release his right to redeem or bar himself from exercising it by any agreement, whether made contemporaneously with the mortgage or subsequently thereto.

4. Where the owner of land conveyed it to another who orally agreed to hold it subject to the grantor's order, although this oral trust could not be enforced, yet if the grantee voluntarily executed it the beneficiary would be placed in the same position as if the trust had been fully expressed in writing.

5. A brief on a motion for a rehearing charging that one of the respondent's contentions was disposed of "cavalierly;" that a certain legal proposition in the opinion "almost defies comment;" that "such a decision violates every instinct of justice," etc.; and describing one of the conclusions of the opinion as a "mere quibble,—a juggling of words," *held* so disrespectful to the court as to justify striking it from the files under Supreme Court Rule 50.

APPEAL from a judgment of the circuit court for Rock county: B. F. DUNWIDDIE, Circuit Judge. *Reversed.*

This is an action in equity seeking judgment declaring a certain deed to be in fact a mortgage. Many of the facts were substantially undisputed and may be stated as follows:

Prior to March, 1889, the plaintiff became the owner of eighty acres of farm land in the town and county of Rock, and his wife became the owner of another eighty in the same town, both tracts being subject to mortgage. Mrs. Lynch was a cousin of the defendants *Joseph A. Ryan* and J. B. Slattery. Edward H. Ryan was a brother of *Joseph A. Ryan.* All the parties named lived in Rock county except Slattery, who lived at Shreveport, Louisiana. Mrs. Lynch died intestate, early in 1889, leaving children, and on March 5, 1889, the plaintiff was appointed administrator of her estate and gave bond in the sum of $2,000, signed by *Joseph A. Ryan* as surety, and entered on his duties as administrator. February 7, 1895, the plaintiff *Lynch* executed and delivered to Edward H. Ryan a general power of attorney authorizing him to transact business and mortgage and convey real estate, and shortly thereafter removed to Shreveport, Louisiana. Edward H. Ryan thereupon acted as plaintiff's agent in managing the plaintiff's interests and looking after his real estate in Wisconsin, and continued so to do until January 1, 1899. In June, 1895, the plaintiff's account as administrator was settled by the county court of Rock county, and plaintiff was found indebted to the estate in the sum of $1,067.94, for which sum judgment was entered against the plaintiff and

*Joseph A. Ryan.* December 14, 1895, the plaintiff, acting through his attorney in fact Edward H. Ryan, gave *Joseph A. Ryan* his personal bond to indemnify him against his liability on the said administration bond and judgment. To secure this bond he also gave a mortgage covering not only the aforesaid eighty acres owned by him in fee, but also his estate by the curtesy in the eighty acres formerly owned by his wife. The court found that the eighty acres owned in fee were at this time not worth more than $2,800 and were incumbered by mortgages to the amount of $2,141.67, and that the lands held as tenant by the curtesy were incumbered in the sum of $1,350, and the value of the plaintiff's interest therein was less than $600. *Joseph A. Ryan* paid the judgment of $1,067.94 upon the administration bond, and was afterwards reimbursed by one of the plaintiff's children in the sum of $158.97, leaving due him $908.97 and interest.

July 11, 1896, the plaintiff executed and delivered to John B. Slattery a quitclaim deed of both parcels of land. The consideration expressed in this deed was $1,800, but in fact there was no consideration therefor, and Slattery simply took the title at the request of the plaintiff under an agreement to hold the title subject to plaintiff's order. E. H. Ryan continued to manage the property. About December 1, 1897, *Joseph A. Ryan* saw E. H. Ryan and threatened to foreclose the mortgage, whereupon E. H. Ryan proposed that he would get Slattery to convey the land if he (*Joseph A. Ryan*) would allow Slattery to have the rents for the year 1898 and thus save the expense of a foreclosure. *Joseph A. Ryan* consented to this, and E. H. Ryan consulted with plaintiff, who consented to the plan, and Slattery on plaintiff's request executed a warranty deed of the lands to *Joseph A. Ryan* December 27, 1897, which deed excepted the mortgages from the covenant against incumbrances, and also stated that it conveyed only such rights, title, and interest as Slattery acquired under his deed from plaintiff. On the 31st of December, 1897,

when this deed was delivered, *Joseph A. Ryan* executed and delivered to Edward H. Ryan a contract giving the latter the exclusive right to sell the property until March 1, 1899, and providing that in case of sale *Joseph A. Ryan* should first be paid $908.97 and interest from November 1, 1897, also his costs and expenses in the care of the land and buildings, with interest, after which Edward H. Ryan was to have all that should be received as his compensation. At the same time it was orally agreed that Edward H. Ryan should receive the rents and profits of the farm for the year 1898 as agent for Slattery or the plaintiff. E. H. Ryan claims that he assigned this contract at once to the plaintiff, but plaintiff claims he never knew of it, and further claims that *Joseph A. Ryan* orally agreed with him that he (*Lynch*) was to retain the same interest in the land as before. This latter claim is denied by *Joseph A. Ryan*. E. H. Ryan continued to collect the rents, and both he and *Lynch* (who had returned to Wisconsin and lived in Beloit) endeavored to sell the land during the year 1898, but did not succeed. Plaintiff applied to *Joseph A. Ryan* in December, 1898, for an extension of time in which to sell, but *Joseph A. Ryan* refused to grant it. *Joseph A. Ryan* went into possession of the land about January 1, 1899, and has since received the rents and profits and expended some $2,000 in improvements on the property.

The court found that the deed from Slattery to *Ryan* was an absolute and valid conveyance of the title of the lands in consideration of the assumption by *Ryan* of the incumbrances and the release of his claim for money paid upon the administration bond, and entered judgment for the defendants declaring the deed to be an absolute conveyance. From this judgment the plaintiff appeals.

For the appellant there were briefs by *Ruger & Ruger,* and oral argument by *Wm. Ruger* and *Wm. Ruger, Jr.*

For the respondents there was a brief by *M. G. Jeffris* and *Ryan & Oestreich,* and oral argument by *Mr. Jeffris, Mr. Edward H. Ryan,* and *Mr. O. A. Oestreich.*

The following opinion was filed April 30, 1907:

WINSLOW, J.   The appellant makes a number of minor contentions, which we find it unnecessary to consider in consequence of the conclusion which we have reached upon the merits of the case.

After careful consideration of the evidence we are unable to agree with the conclusion that the plaintiff's equity of redemption in the lands in question was extinguished by the deed from Slattery to the defendant *Ryan,* and we shall briefly state the reasons for this conclusion.   Where the relation of mortgagor and mortgagee of real estate has been once established between two parties, and it is claimed that by a subsequent deed of the premises by the mortgagor to the mortgagee the equity of redemption has been extinguished and the mortgagee has become the absolute owner of the premises, it must be clearly shown that the conveyance or release was voluntary on the part of the mortgagor, was based on an adequate consideration, was untainted by fraud, and that no advantage was taken of the debtor's necessities to drive a hard bargain.   Such transactions will be closely scrutinized, and if the proof be clear and satisfactory that the requirements above named have been observed the transaction will be sustained, otherwise not.   In doubtful cases the courts incline to hold that the mortgage relation still exists. These propositions are very well established.   *Rockwell v. Humphrey,* 57 Wis. 410, 15 N. W. 394; *Kunert v. Strong,* 103 Wis. 70, 79 N. W. 32.   It is manifest that, where no part of the debt is discharged at the time of the conveyance or release, the change in the relationship of the parties is one in name only and not in substance.   A mortgagor cannot gratuitously release his right to redeem or bar himself from exercising it by any agreement, whether made contemporaneously with the mortgage or subsequently thereto.   2 Jones, Mortg. (5th ed.) §§ 1038–1046.

In the present case the court found that the consideration

for the transfer by *Slattery* to *Joseph A. Ryan* was the assumption by *Ryan* of the prior mortgages on the lands and the discharge of *Joseph A. Ryan's* claim against *Lynch* for payment of the judgment on the administration bond. We have searched the evidence in vain to find any basis for these findings. *Ryan* did not assume the payment of the prior mortgages by any stipulation in the deed, nor do we find any evidence of any agreement so to do either oral or written outside of the deed. There was no discharge of the indebtedness from *Lynch* to *Ryan* made nor any delivery of the bond. Doubtless a formal discharge would not be necessary, but it must at least appear that the parties agreed that the debt should be considered paid, and there is no evidence of such an agreement or even of any conversation concerning the matter. All the evidence tends strongly to the conclusion that the idea was simply to put the title into *Ryan's* name, in order that a good deed might be made to a purchaser at any time without the necessity of a foreclosure. If there were any doubt about this as a conclusion of fact from the acts of the parties, it would seem to be removed by a very significant clause in the written agreement which *Joseph A. Ryan* gave to E. H. Ryan at the time of the execution of the deed giving E. H. Ryan the exclusive right of sale of the lands until March 1, 1899. This clause is the final one in the agreement and reads as follows:

"On the first day of March, 1899, this appointment of Edward H. Ryan as agent of *Joseph A. Ryan* to sell the lands herein described, and all rights, privileges, and authority hereby conferred, shall cease and terminate and become null and void, and said Edward H. Ryan hereby agrees to surrender this evidence of authority to said *Joseph A. Ryan, who upon said day last named shall become the owner thereof.*"

The final words of this clause expressly negative the idea that the deed itself transferred or was intended to transfer the absolute title. They are only consistent with the idea

that the real ownership was still to remain in *Lynch* (or in Slattery for the benefit of *Lynch*) until the 1st of March, 1899. In other words, they recognize in no uncertain terms the continued existence of the mortgage relation. Many other facts in evidence reinforce this conclusion. In view of the requirement of law that the release of the equity of redemption must be clearly proven to have been voluntarily made without fraud or overreaching and must be based on an adequate consideration, we are forced to the conclusion that the proof in this case was insufficient to justify the finding made. The mortgage relation was not extinguished by the deed from Slattery to *Joseph A. Ryan*. The plaintiff was entitled to a decree adjudging said deed to be a mortgage, that he has the right to redeem therefrom, and that an accounting must be had before the court or a referee, and for this purpose all necessary additional evidence may be taken.

*By the Court.*—Judgment reversed, and action remanded for further proceedings and final judgment in accordance with this opinion.

The following opinion was filed June 20, 1907:

WINSLOW, J. Upon a motion for rehearing made by respondents a long and vehement brief is presented, in which the former opinion in this case is vigorously attacked. In the course of this brief it is said that one of the respondents' contentions is disposed of "cavalierly;" that a certain legal proposition in the opinion "almost defies comment;" that "such a decision violates every instinct of justice, disregards the fundamental maxims of equity, rewards conduct which the law abominates and abhors, and from which all moral sense recoils;" and the brief further asks with regard to one of the conclusions stated in this opinion: "Is it not a mere quibble—a juggling of words?"

This language is certainly disrespectful, to the court, and the brief might well be stricken from the files under Supreme Court Rule 50. After due deliberation, however, we have concluded not to proceed to this extreme, feeling sure that counsel will, on reflection, recognize the impropriety of their remarks and refrain from such outbreaks in the future.

This court endeavors to approach and decide every motion for rehearing without pride of opinion, but with the single desire to ascertain whether it has erred in its judgment, and it will cheerfully retrace its steps if convinced of error. To this end it welcomes free discussion and invites honest and fearless criticism, but when discussion and criticism give place to vituperation, counsel abuse their privilege. Counsel in the present case, deeply impressed with the belief that injustice has been done by the decision, seem to have forgotten for the moment that measure of true courtesy which is always due from counsel to a court which is honestly and laboriously seeking to administer justice and justice alone. This court makes no claim to infallibility, but it does claim to make every effort in its power to ascertain the law and apply it to the case in hand; and the writer hereof claims, both on his own behalf and on behalf of the court, entire freedom from the charge of quibbling or juggling with words. Counsel who make such charges can have no just appreciation of the labors of this court. If they had they would know that their words are neither fitting nor just. A court which is striving simply to do its duty needs no flagellation of this nature. The lash is for the shirking horse, not for the willing one which is bending its neck and straining every muscle to move the load.

Turning to the legal propositions urged in the brief we find the most important one to be that the court failed to consider the effect of the voluntary deed from *Lynch* to Slattery. The argument is that *Lynch's* deed to Slattery conveyed the absolute title, and that *Lynch* ceased to have any interest in the land or any right to enforce any trust

therein; that when Slattery conveyed to *Ryan* he transferred to him such absolute title; and hence that *Lynch* has no remedy of any nature against *Ryan* any more than he had against Slattery. It seems that a brief consideration of the situation will disclose the fallacy in the argument. It is doubtless true that *Lynch* could not have compelled Slattery to reconvey the land to him nor to convey it to any one else. The deed was absolute in form, and Slattery could do with the land as he chose, unless the deed was attacked and set aside by *Lynch's* creditors. He had, however, received the title upon a parol trust arrangement by which he was to hold the title for *Lynch's* benefit and subject to his order. This trust was incapable of enforcement, but if Slattery voluntarily executed it the beneficiary (*i. e.* the plaintiff) would be placed in the same position as though the trust had been fully expressed in writing. *Main v. Bosworth,* 77 Wis. 660, 46 N. W. 1043; *Karr v. Washburn,* 56 Wis. 303, 14 N. W. 189. Now, if *Lynch* had conveyed the land to Slattery by deed stating that the title was conveyed simply in trust to mortgage or convey the same to *Ryan* as security for *Lynch's* debt to *Ryan,* there can be no doubt that up to the time of the execution of the trust *Lynch* would have retained the beneficial equitable title and Slattery would have held simply the legal title charged with the execution of the trust. When he had executed the trust Slattery would clearly have divested himself of his trust estate, and *Ryan* would have become the mortgagee of the land and *Lynch* the mortgagor. Slattery would simply have served as the conduit through which the mortgage interest passed from *Lynch* to *Ryan.* The voluntary performance of the parol trust puts the parties in the same position under the authorities cited as though the trust had been expressed in writing, and we therefore find no error in the previous opinion in this regard.

We have examined carefully the other contentions made in the brief, but we do not find it necessary to discuss them at

length. The principles laid down in the opinion are in our judgment in full accordance with the previous decisions of this court and with the general current of decisions elsewhere.

*By the Court.*—Motion overruled, with $25 costs.