## Coates, Respondent, vs. Marsden, Appellant.

*February 3—February 22, 1910.*

*Mortgages: Equity of redemption: Extinguishment by deed to mortgagee: Validity: Burden of proof: Pleading: Instructions to jury.*

1. Though an arrangement between mortgagor and mortgagee by which the equity of redemption is apparently extinguished will be closely scrutinized and it must appear that the consideration was adequate and that no advantage was taken of the mortgagor's necessities, and though in doubtful cases the courts incline to hold that the mortgage relation still exists, nevertheless such an arrangement will be sustained if fairly made.

2. Where the mortgage relation has been apparently terminated by an absolute deed from mortgagor to mortgagee, but the mortgagor claims the excess obtained by the mortgagee, over and above the mortgage debt, on a subsequent sale of the premises, the burden of proof is upon the mortgagor, whether he bases his claim upon an express contract to pay such an excess to him or upon continuance of the mortgage relation either by agreement between the parties or because advantage had been taken of his necessities.

3. Where in such case the mortgagor's complaint alleged an express contract for payment to him of any excess received on the sale, an instruction to the jury that the controlling question in the case was whether the parties intended to cancel the mortgage debt and that upon this question the burden of proof was on the defendant, was confusing and erroneous.

APPEAL from a judgment of the circuit court for Rock county: GEORGE GRIMM, Circuit Judge. *Reversed.*

The complaint alleged ownership by the plaintiff on the 18th day of December, 1906, of 240 acres of land in Juneau county, subject to a mortgage of $2,915 held by the defendant; that prior to said date the defendant threatened to foreclose the mortgage; that owing to poor crops for a number of years plaintiff was very hard up, and that in order to save himself from financial ruin he executed a deed of the 240 acres of land aforesaid to the defendant for the nominal consideration of $1,933.50, indorsed upon the mortgage, in consideration of an agreement by defendant that he (plaintiff) should have the privilege of selling the land and retaining all that he could realize above said sum of $1,933.50 with interest; and that it was also agreed that defendant could sell the land at a fair price, and if he did so would pay to plaintiff all that he realized over and above $1,933.50 with interest, and also that the deed given to defendant should be considered to be security only for said sum of $1,933.50 and interest. It was further alleged that the lands so deeded were reasonably worth $6,000 at the time of the deed; that on March 4, 1907, the defendant sold and conveyed the lands to one Kennedy for the consideration paid of $6,000, and that thereby the sum of $3,947.76 became due to the plaintiff, being the difference between $1,933.50 with interest at seven per cent. from December 18, 1906, until November 4, 1907, and said sum of $6,000 which said defendant *by said agreement* agreed to pay to this plaintiff. Judgment was demanded for this sum with interest from November 4, 1907.

The defendant by answer admitted plaintiff's ownership of the lands, the mortgage indebtedness, the execution of the deed to himself, and his subsequent sale of the land to Kennedy, but denied that he received from Kennedy any sum in excess of $1,933.50 with interest, and denied that he ever agreed to pay any such excess to the plaintiff, or that the deed

to him was to have the effect of a mortgage. He admitted, however, that he gave plaintiff an option to purchase the premises for $1,933.50 and interest, subject, however, to defendant's right to sell the same at any time to a *bona fide* purchaser.

There was a jury trial. It appeared that the plaintiff in December, 1906, owned 320 acres of farm land, beside a house and lot in the village of Finley, and that it was all covered by a mortgage of $2,915 held by the defendant; that as a result of negotiation between the parties it was agreed that plaintiff should deed to the defendant the 240 acres in dispute here for the expressed consideration of $1,933.50, which sum was considered as being the same proportion of the whole debt as the land deeded was of the entire land, and that this deed was duly executed and delivered December 18, 1906, and the sum of $1,933.50 was indorsed on the note by the defendant and the land released from the mortgage; that at the same time, and as a part of the same transaction, a written agreement or option was drawn by a lawyer, signed by *Marsden* and given to the plaintiff, which declared that *Marsden* gave to *Coates* an option on the land (describing it) for $1,933.50 with seven per cent. interest till paid, and all taxes thereafter paid by *Marsden,* as well as all improvements which *Marsden* may put on the land, and further providing that in case *Coates* elected to purchase the land under the option he was to pay the purchase-price at a certain bank at Edgerton, Wisconsin, and then receive a warranty deed of the land free of liens, and that the time within which the payment might be made should continue until *Coates* should wish to terminate it, or until *Marsden* should sell the land to a *bona fide* purchaser and so notify *Coates.* The agreement further stated that it was given to give *Coates* the right to sell the land to other parties if he could do so in a reasonable time and realize more therefrom than had been allowed by *Marsden,* who had taken a deed in payment of $1,933.50 on

a mortgage held by him on this and other land.    It further appeared that in November, 1907, the defendant traded the land in question to one Kennedy in exchange for 200 acres of land in Rock county, subject to a mortgage thereon of $9,000, and that in *Marsden's* deed to Kennedy the consideration was expressed as the sum of $6,000.

The plaintiff testified that while he and *Marsden* both dictated what should go into the written agreement or option, and that it was read over to him by the lawyer, and was intended to cover the whole agreement, still he testified (against objection) that it did not cover the whole bargain, and that as matter of fact *Marsden* agreed that if he (*Marsden*) sold the land himself he was only to keep out of the purchase price the $1,933.50 and interest, with taxes and any improvements he might put on the land, and was to pay the balance to the plaintiff; "that all he wanted out of the land was his just due, and what was realized out of it over and above was to be mine" (*Coates's*).    There was unsatisfactory testimony as to the value of the land in question; the witnesses on the part of the plaintiff fixing it at from $20 to $25 an acre and the witnesses on the part of the defendant at $10 per acre.    As to the Kennedy land, the testimony was also unsatisfactory, and ranged from $50 to $65 per acre.

The court charged the jury, in substance, that the controlling question in the case was the question whether or not the intention of the parties was to cancel the mortgage debt and terminate the relation of mortgagor and mortgagee, and that this intention was to be gathered from all the circumstances in evidence, including the facts as to the adequacy or inadequacy of the consideration and as to whether improper advantage was taken by one over the other; that upon this question the burden of proof was on the defendant, and the jury must be satisfied by the preponderance of the evidence that the intention of the parties was to terminate the mortgage relation and vest the title of the lands in the defendant, and if not so

satisfied the plaintiff must recover the difference between $1,933.50 and the value in money of the property received on the sale of the land to Kennedy. The jury returned a verdict for the plaintiff and assessed the damages at $1,025, and the defendant appeals.

*L. E. Gettle,* for the appellant.

For the respondent there was a brief by *Veeder & Veeder,* and oral argument by *C. A. Veeder.*

WINSLOW, C. J. We do not deem it necessary to discuss in detail the errors assigned; it is enough to say that the exceptions taken on the trial were sufficient to challenge not only the correctness of the various rulings and instructions, but to sharply raise the general question as to whether the case was tried and submitted to the jury upon the proper basis, and it is this general question which will be treated.

When mortgagor and mortgagee make any arrangement by which the equity of redemption is apparently extinguished, the courts will scrutinize the transaction closely; but this does not mean that the arrangement will not be sustained if fairly made. *Kunert v. Strong,* 103 Wis. 70, 79 N. W. 32. It is evident that there might have been three different situations in which *Coates* might, notwithstanding the absolute deed, be entitled to recover from *Marsden* the surplus which *Marsden* received on sale of the land in question over and above the amount credited on the mortgage debt, viz.: (1) by virtue of an express contract to account for such surplus made by *Marsden* as a part of the consideration for the absolute deed; (2) by virtue of an agreement, either oral or written, made at the same time, to the effect that the mortgage relation was to continue notwithstanding the deed; or (3) by virtue of the fact that the mortgagee secured his deed by fraud or taking advantage of his debtor's necessities, and hence the mortgage relation must be held to continue in defiance of the absolute deed and the intention of the parties. In the first

case supposed the recovery would be by virtue of a contract pure and simple; in the second and third cases it would be by virtue of the fact that the defendant had wrongfully disposed of the mortgaged property and must account for the proceeds over and above his mortgage interest, as for money had and received. *Barchent v. Snyder,* 128 Wis. 423, 107 N. W. 329. In either of these cases the plaintiff, being the actor, has the burden of proof. In the first supposed case he must prove the express contract on which he bases his alleged right, and in the second and third cases he must prove the continued existence of the mortgage relation. This is necessarily so because, the defendant having sold property of which he has absolute record title, the consideration received is *prima facie* his money, and any one else who claims any part of it must show some facts which overcome this *prima facie* right before he can recover.

Herein lies the fundamental difficulty with the manner in which the case was tried and submitted to the jury. Though the complaint charges that an express contract was made by *Marsden* to pay over any excess he might receive on sale of the premises, and industriously claims recovery of the amount *so contracted* to be paid, the charge of the court is to the effect that the controlling question in the case was the question whether the parties intended to cancel the mortgage debt and upon this question the burden of proof was on the defendant. This must certainly be considered as confusing and erroneous. If there was such a contract made and the plaintiff was relying on it, he had the burden of proof, and the question whether the parties intended to cancel the mortgage debt cut no figure. On the other hand, if plaintiff relied on the fact that the mortgage relation still continued by agreement of the parties or because advantage was taken of the debtor's necessities, and thus that he was entitled to recover because he was still the real owner of the equity of redemption, he had the burden of proving these facts, because on

the face of the papers the defendant had absolute title, and the man who comes into court seeking a recovery on the ground that the apparent absolute title is only a lien must produce the facts which show it.

This principle in no way interferes with the well-understood principles that such transactions will be closely scrutinized by the court, that it must appear that the consideration of the transfer was adequate and that no advantage was taken of the debtor's necessities to drive a hard bargain, and that in doubtful cases the courts incline to hold that the mortgage relation still exists. *Lynch v. Ryan,* 132 Wis. 271, 111 N. W. 707, 112 N. W. 427. These are rules governing the quantum or weight of evidence rather than the burden of proof. He who charges fraud as the basis of a recovery must prove fraud. It will take little evidence, perhaps, to make a *prima facie* showing of fraud in such a case. The fact that the relation of debtor and creditor existed, and the fact that no part of the debt was discharged, or that the consideration was not fairly adequate, will call for complete and satisfactory explanation and proof on the part of the mortgagee; but this does not change the rule that the burden of proof is with the plaintiff, and that he should put in all his evidence tending to show fraud, either direct or circumstantial, while making his case. *Winn v. Itzel,* 125 Wis. 19, 103 N. W. 220.

It may be remarked here that this action does not seem to be based on the fact that defendant took advantage of plaintiff's necessities to drive a hard bargain which a court should set aside, but rather that a bargain or perhaps two bargains were made which the defendant has failed to carry out. While the complaint alleges that foreclosure was threatened, and that the plaintiff was hard up and agreed to the transfer to save himself from financial ruin, he nowhere alleges that the agreements which he finally made and which he is endeavoring to enforce in this action were unfair or unsatis-

factory or that he did not voluntarily agree to them, and the evidence of anything like fraud, undue advantage, or coercion seems very weak. The evidence as to values both of the Juneau county land and the Rock county land is also very unsatisfactory.

Upon the whole case we cannot say that it appears that substantial justice has been done. The plaintiff based his case upon contract and seems to have recovered upon tort, because the court charged the jury that the vital point in the case was the question of the intention of the parties, and upon this question the "adequacy or inadequacy of the consideration, and whether or not improper advantage was taken by one over the other, are all matters proper to be considered."

If upon another trial the plaintiff proposes to rely upon fraud, coercion, or undue advantage, it would seem safer to allege such facts by amended complaint. In the event that such allegation be made, it would be better to determine the issues by special verdict, and thus the questions whether any contract was in fact made to return the excess, whether it was agreed that the mortgage relation should continue, and whether undue advantage was taken of the plaintiff so that the mortgage relation never in fact terminated, could be submitted without confusion and each with its proper instruction.

*By the Court.*—Judgment reversed, and action remanded for a new trial.