ACME BRICK COMPANY, Appellant, vs. JACOBI-ERDMAN, INC., Respondent.

*May 10—September 10, 1940.*

For the appellant there were briefs by *Thiel & Allan* of Mayville, attorneys, and *Bender, Trump & McIntyre* and *Werner J. Trimborn,* all of Milwaukee of counsel, and oral argument by *Mr. Trimborn, Mr. Walter H. Bender,* and *Mr. Lloyd Allan.*

For the respondent there was a brief by *Lecher, Michael, Whyte & Spohn,* attorneys, and *Malcolm K. Whyte* and *Herman E. Friedrich* of counsel, all of Milwaukee, and oral argument by *Mr. Whyte* and *Mr. Friedrich.*

The following opinion was filed June 4, 1940:

NELSON, J.   The broad question presented on this appeal is whether the finding of the court that the deed in question was not intended to be a mortgage, was against the great weight and clear preponderance of the evidence.   The question presented by the defendant's motion for review is whether the judgment of the justice of the peace in the forcible-entry and unlawful-detainer action was *res adjudicata.*   In our view, we need determine only the question whether the trial court erred in finding that the deed in question was not intended to be a mortgage.

Because the trial court was very liberal in receiving evidence, a rather long and complicated record is before us. The facts are largely undisputed.   We shall not attempt minutely to recite the facts relating to the several transactions which occurred prior to March 31, 1938, when the plaintiff and defendant entered into the written contract

pursuant to which the deed, lease, and option were executed and delivered.

The plaintiff was incorporated in 1912. It owned and operated a brick-manufacturing plant in the town of Barton, near the city of West Bend, in Washington county. Prior to the year 1931, the plaintiff was extensively engaged in the manufacture of sand-lime brick. Some time in 1931, however, it ceased operations and the plant was closed down. It was not again operated until late in the fall of 1936. At that time the plaintiff's stock was largely owned by two stockholders, Toepfer and Pokorny. Together they owned nine hundred shares, the par value of which was $90,000. The plaintiff's plant was then subject to a $10,000 judgment which was also a lien against Toepfer's home. Toepfer, apparently, was anxious to sell his stock and to have the judgment against his home released. One Marggraff obtained an option to purchase the stock held by Toepfer and Pokorny. A one-half interest in that option was assigned by Marggraff to Rasmussen. Marggraff and Rasmussen sought financial assistance from the defendant. After having been assured of assistance by the defendant, they offered on October 15, 1936, to purchase the Toepfer and Pokorny stock on a certain basis, which Toepfer and Pokorny accepted. The gist of the agreement was that Toepfer and Pokorny would sell their stock for $30,000. Ten thousand dollars was to be paid within a reasonable time thereafter so that the judgment against the plaintiff and Toepfer might be satisfied. The remaining $20,000, less $100 already paid, was to be paid at the rate of $100 per month and all of it within five years.

The defendant agreed to a proposal made by Rasmussen and Marggraff to transfer to the plaintiff certain real estate belonging to the defendant, free and clear of all taxes and special assessments, in consideration of the plaintiff's executing and delivering to it a promissory note for $28,900, with

interest at six per cent per annum payable monthly, which note provided that payments of $100 upon the principal should be made each month during the first six months and payments of $200 each month thereafter, and which further provided the entire balance of principal should be paid within three years from its date. To secure the said note, the plaintiff executed and delivered to the defendant a mortgage for $28,900, which covered its real estate, plant, machinery, and equipment. It also assigned to the defendant as further collateral security, five hundred ten shares of its common stock. Rasmussen and Marggraff each agreed not to draw more than $200 per month for their services to the plaintiff. The defendant agreed to make certain cash advancements pending liquidation of the properties conveyed by it to the plaintiff. Some time later a new arrangement was entered into. The note and mortgage for $28,900 and the five hundred ten shares of stock were returned to the plaintiff. In lieu thereof four hundred shares of the plaintiff's stock were issued to the defendant. Jacobi and Erdman, as individuals, were elected officers and directors. Salaries were to be paid to Rasmussen, Marggraff, Jacobi, and Erdman. The plaintiff also obtained a cancellation of its liability for $5,000, which sum had been advanced by the defendant in October, 1936, pursuant to the first agreement. In January, 1937, the real estate acquired from the defendant was liquidated for about $18,500. In May, 1937, the stockholder relationship of Jacobi and Erdman to the plaintiff was changed. The four hundred shares of stock were assigned to the plaintiff, and the plaintiff executed and delivered to the defendant its note for $32,000 and its mortgage which covered its plant, etc., subject, however, to outstanding taxes and unpaid judgments. The plaintiff also delivered to the defendant a bill of sale of 800,000 bricks which had a market value when delivered of about $10,000. Subsequently, the defendant released its interest in 350,000 of the bricks sold to it in exchange for a note of the plaintiff

for $4,375. The plaintiff received the four hundred shares of its stock and a promissory note of one Trimborn for $1,500, which was collateralized by sixty shares of its stock, but on which there was no personal liability of Trimborn, a note of Underwood Acres, Inc., for $2,500, and a waiver of the salary claim of Jacobi and Erdman. The plaintiff paid interest on the defendant's mortgage to December 31, 1937. In March, 1938, the plaintiff was very much in need of additional moneys and again beseeched the defendant to further finance it. Extended negotiations were had which culminated in a certain written agreement dated March 31, 1938. That contract contained the following provisions:

"Jacobi-Erdman, Inc., is making an offer to purchase from Acme Brick Company their entire plant, machinery, real estate and equipment now located at Barton, Wis., on which Jacobi-Erdman, Inc., is holding a first mortgage amounting to $32,000. The purchase price consists of as follows: The mortgage they are now holding, amounting to $32,000, Trimborn note amounting to $1,500, cash to be paid amounting to $3,000, making a total of $36,500.

"On acceptance by Acme Brick Company of this offer, Jacobi-Erdman, Inc., agrees to execute an agreement to lease said plant to Acme Brick Company for a term of ten years at a rental of $200 per month, to be paid in advance beginning May 1, 1938. It is also agreed to give an option to Acme Brick Company to repurchase this entire plant for the sum of $36,500. This option is to be in force for the entire term of this lease."

It was further agreed that the plaintiff might sell a certain property belonging to the defendant for the purpose of obtaining $4,300 with which to purchase a block-manufacturing machine, and that that loan be secured by chattel mortgage and otherwise. The contract further provided for the immediate deposit of $1,000 as a down payment on the purchase of the plant and for the payment of the remainder of the cash amounting to $2,000, when the sale had been duly approved by a meeting of the stockholders. Pursuant

to that contract, the deed was executed and deposited in escrow to temporarily secure the $1,000 of the purchase price advanced. On April 28, 1938, a ten-year-term lease, covering all of the property, was executed and delivered. The lease contained an option to the plaintiff to repurchase the property for $36,500, less all payments made by the plaintiff in pursuance of its agreement to pay to the defendant thirty cents for every thousand brick sold and delivered by it after June 1, 1938. The true rent reserved in the lease for which the plaintiff was to be given no credit on the repurchase price was $200 per month. The plaintiff paid the rent for a number of months and also paid certain additional sums based on the thirty cents per thousand brick sold by it. By June of 1939, however, the plaintiff was considerably in arrears under the lease. The defendant brought a forcible-entry and unlawful-detainer action in justice court and thereafter the plaintiff commenced the action to have the deed declared to be a mortgage and to compel the defendant to foreclose it. The plaintiff obtained a temporary restraining order and delivered the summons, complaint, and restraining order to the sheriff for immediate service. The papers, however, were not so served, and before the restraining order was served the defendant took judgment by default in the justice-court action.

It is, of course, well established in this state that as between the parties to it, a deed absolute in form, if given to secure a loan or intended to be a mortgage, will be considered by the courts to be a mortgage. *Broadbent v. Hutter,* 163 Wis. 380, 157 N. W. 1095, and other cases hereinafter cited.

It is also well established that a transaction involving a deed given by a mortgagor to his mortgagee will be carefully scrutinized by the court for the purpose of ascertaining whether the conveyance was voluntary on the part of the mortgagor, whether the conveyance was supported by an

adequate consideration, whether it was untainted by fraud, whether made without advantage being taken of the debtor's necessity to drive a hard bargain, and whether there was a discharge of the mortgage indebtedness, or at least a binding agreement to consider it paid and discharged. *Lynch v. Ryan,* 132 Wis. 271, 111 N. W. 707, 112 N. W. 427; *Paul v. Smith,* 215 Wis. 613, 255 N. W. 919, and cases cited therein.

It is also well established that if such a transaction is fairly made and no unconscionable advantage is taken of the mortgagor, the transaction will be sustained. *Kunert v. Strong,* 103 Wis. 70, 79 N. W. 32; *Coates v. Marsden,* 142 Wis. 106, 124 N. W. 1057.

Such arrangements, clearly, are permissible arrangements that may properly be made by a mortgagor and a mortgagee, if understandingly entered into and without fraud or unconscionable advantage or overreaching.

The plaintiff contends that the facts of this case, and particularly those involved in the transaction of March 31, 1938, require that the rules declared in the *Lynch* and *Paul Cases, supra,* be applied, and that the transaction be closely scrutinized. Ordinarily, where it is claimed that a deed absolute was intended to be a mortgage, parol evidence is admissible. That is elementary. The defendant contends that it clearly appears that the full and complete agreement between the parties was integrated in the contract of March 31, 1938, and that parol evidence should not have been admitted to vary, alter, or change the unambiguous language of the contract. We consider it unnecessary to determine whether, in view of the unambiguous provisions of the contract, parol evidence was admissible, for the reason that the trial court was most liberal in receiving parol evidence, not only as to the intention of the parties and the surrounding circumstances, but also permitted the plaintiff to show the circumstances involved in and surrounding all of the prior transac-

tions had by Marggraff, Rasmussen, and the plaintiff with the defendant. The court considered all of those facts in connection with the declared rule in the *Lynch Case, supra,* and then specifically found that the deed was given in furtherance of a sale pure and simple and was not intended to be a mortgage.

The plaintiff particularly contends that the introduction of parol evidence was permissible and that the testimony of Jacobi shows without dispute that the mortgage was neither released nor satisfied of record, that the original $32,000 note was not in fact turned over to the plaintiff, and that as a result the indebtedness of the plaintiff, evidenced by the $32,000 mortgage, was not discharged or satisfied. One of the facts which courts carefully scrutinize in such transactions is whether the mortgage indebtedness was discharged, or whether a binding agreement was entered into which provided that such indebtedness should be considered paid and discharged. *Paul v. Smith, supra.* The plaintiff's contention, when applied to the facts of this case, is not controllingly persuasive, since the contract of March 31, 1938, specifically referred to the $32,000 mortgage and provided:

"The purchase price consists of as follows: The mortgage they are now holding, amounting to $32,000."

When the agreement was carried out by delivery of the deed and lease containing the option, it is clear that the defendant had no shadow of a valid claim against the plaintiff under the $32,000 note and mortgage. The court was justified in concluding that the defendant desired to prevent an immediate merger of its equitable title under the mortgage with the legal title conveyed to it under the deed, for the purpose of protecting itself against possible liens or judgments against the plaintiff which might have attached between the date of its mortgage and the date of acquiring the legal title.

The plaintiff further contends that the deed was not supported by an adequate consideration. The consideration and its adequacy are also elements which the courts carefully scrutinize in such cases. The court found that the consideration was adequate and that the value of the property conveyed was reasonably commensurate with the purchase price of $36,500. It further appears that shortly after March 31, 1938, the defendant offered to convey all of the property to the plaintiff during a limited period of time for $30,000. It is our view that the finding of the trial court that the purchase price was not inadequate and that the property and plant was not worth between $50,000 and $100,000, as contended by the plaintiff, may not be disturbed. When it is considered that Marggraff and Rasmussen, late in 1936, had purchased the nine hundred shares of the plaintiff's stock from Toepfer and Pokorny for $30,000, $20,000 of which was to be paid in instalments; that the plaintiff had not been very successful in its operations during the two years following; that despite the fact that it seemed to harbor certain grievances against the defendant, it found it necessary to look to the defendant for financing, and that the defendant offered to sell the property to the plaintiff for $30,000, it may not be said that the finding of the trial court as to the adequacy of the consideration was against the great weight and clear preponderance of the evidence.

In *Paul v. Smith, supra,* it was said (p. 614):

"It was settled in those cases that, in order to sustain such a conveyance as valid, *it must be established by clear and satisfactory proof,* upon closely scrutinizing the transaction, that the conveyance was voluntary on the part of the mortgagor; based on an adequate consideration; untainted by fraud; made without advantage being taken of the debtor's necessity to drive a hard bargain; and that there was a discharge of the mortgage indebtedness or at least a binding agreement to consider that indebtedness paid and discharged."

From that language it may be thought that this court held that the burden of proof in such cases is upon *the defendant* to establish the several facts by clear and satisfactory proof in order that such a transaction may be upheld. We take this opportunity to state, so that that language may be clarified, that this court did not intend to overrule its former cases in which it was held that the burden of proof to show that an absolute deed was intended to be a mortgage, is upon the plaintiff. In *Coates v. Marsden, supra,* it was said (pp. 111, 112):

"If there was such a contract made and the plaintiff was relying on it, he had the burden of proof, and the question whether the parties intended to cancel the mortgage debt cut no figure. On the other hand, if plaintiff relied on the fact that the mortgage relation still continued by agreement of the parties or because advantage was taken of the debtor's necessities, and thus that he was entitled to recover because he was still the real owner of the equity of redemption, he had the burden of proving these facts, because on the face of the papers the defendant had absolute title, and the man who comes into court seeking a recovery on the ground that the apparent absolute title is only a lien must produce the facts which show it.

"This principle in no way interferes with the well-understood principles that such transactions will be closely scrutinized by the court, that it must appear that the consideration of the transfer was adequate and that no advantage was taken of the debtor's necessities to drive a hard bargain, and that in doubtful cases the courts incline to hold that the mortgage relation still exists. . . .

"The fact that the relation of debtor and creditor existed, and the fact that no part of the debt was discharged, or that the consideration was not fairly adequate, will call for complete and satisfactory explanation and proof on the part of the mortgagee; but this does not change the rule that the burden of proof is with the plaintiff, and that he should put in all his evidence tending to show fraud, either direct or circumstantial, while making his case. *Winn v. Itzel,* 125 Wis. 19, 103 N. W. 220."

It appears that Marggraff and Rasmussen were intelligent, able, and experienced businessmen who understood the plain ordinary meaning of the language of the contract, the meaning and effect of the deed, and the lease and the option. There is nothing in those documents even tending to suggest that the deed was intended to be a mortgage. There is nothing in those instruments amounting to a promise or an obligation on plaintiff's part to pay the $36,500 to the defendant. The contract of March 31, 1938, was not fully consummated for almost a month and not until the contract, the giving of the deed, the acceptance of the lease and option had been fully approved and ratified by both the plaintiff's board of directors and its stockholders. Under all of the circumstances, we cannot say that the findings and conclusions of the trial court are contrary to the great weight and clear preponderance of the evidence, or contrary to law.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on September 10, 1940.