BAILEY et al., Appellants, v. ST. LOUIS UNION
TRUST COMPANY.

#### Division One, May 24, 1905.

1. **MORGAGE: Quitclaim to Mortgagee: Equitable Mortgage.**
Where the mortgagor conveys real estate, burdened by two
deeds of trust, to the mortgagee in the second, by a quitclaim
deed, which on its face is an absolute conveyance, and he and
the mortgagee enter into a concurrent agreement to reconvey
upon condition, to-wit, that the mortgagee will reconvey the
premises to the mortgagor if he will pay the second mortgage
debt within a certain time, the quitclaim deed is not an equit-
able mortgage, unless the quitclaim, although. absolute on its
face, was in fact given as a mere security for a debt.

2. ———: ———: ———: **Security For Debt.** Where the mort-
gagor by quitclaim deed, absolute on its face, conveys property
to the mortgagee and enters into a concurrent agreement to
reconvey on condition, and there is nothing, either in the deed
or in the concurrent agreement or in the circumstances, to in-
dicate that the deed was given as a mere security for the debt,
it will not be held to be such. And the fact that the mortga-
gee at the time had a deed of trust on the property to secure
his debt would indicate that he would not have exchanged this
better form of security for such an equitable mortgage, but that
the quitclaim was made to prevent a foreclosure sale under
that better security.

3. ———: ———: ———: .**Recovery By Mortgagor.** Where the
mortgagor has conveyed real estate to the mortgagee by abso-
lute deed, which was not given as security for the debt, and he
and the mortgagee enter into a concurrent agreement to recon-
vey upon condition, and after condition broken the mortgagee
conveys the property to other parties, the mortgagor cannot
maintain a suit to recover the difference between the mortga-
gor's indebtedness and the true value of the property.

Appeal from St. Louis City Circuit Court.—*Hon. Sel-
den P. Spencer,* Judge.

AFFIRMED.

*H. Chouteau Dyer* for appellants.

(1)   To determine whether a transaction is a conditional sale or a mortgage, the court will look not only to the deeds and writings, but to all the circumstances of the contract, to ascertain the real intention of the parties. Brant v. Robertson, 16 Mo. 129; Tibeau v. Tibeau, 22 Mo. 77; Cobb v. Day, 106 Mo. 278; Kraemer v. Adelsberger, 122 N. Y. 467; Locke's Extr. v. Palmer, 26 Ala. 312; Wing v. Cooper, 37 Vt. 169; Voss v. Eller, 109 Ind. 260.   (2)  The fact that the defeasance relied on in this case was not executed until some days after the quitclaim deed was passed, is immaterial, as the agreement was entered into coincident with the giving of the deed, and such a defeasance need not be in writing.   O'Neil v. Capelle, 62 Mo. 202; Bender v. Zimmerman, 122 Mo. 194; McClurkan v. Thompson, 69 Pa. 305.   (3)  "It may be laid down generally, and subject to very few exceptions, that wherever a conveyance or assignment of an estate is originally intended as a security for money, whether intention appears from the deed itself, or any other instrument, it is always considered in equity a mortgage, and redeemable, even though there is an express agreement of the parties that it shall not be redeemable, or that the right of redemption shall be confined to a particular time or to a particular description of persons."   The quitclaim deed was given by plaintiff to secure an existing debt.   Wilson v. Drumrite, 21 Mo. 325; Sharkey v. Sharkey, 74 Mo. 543.   (4)  The evidence clearly discloses that there was a subsisting debt at the time the quitclaim deed was executed, that the evidence of this debt, to-wit, the notes secured by the two deeds of trust, were not surrendered and cancelled when the quitclaim deed was given; that interest was charged on this debt subsequent to the giving of the deed; that the grantor was left in possession of part of the property conveyed, and that defendant professed to be aiding

plaintiff to secure funds to take up the loan. These facts are clearly indicative of a mortgage. Book v. Beasly, 138 Mo. 461; Henry v. Davis, 7 Johns. Ch. 40; Bayler v. Bailey, 5 Gray (Mass.) 505; Reilly v. Cullen, 159 Mo. 322; 2 Story Eq. Jur. (13 Ed.), sec. 10; Ennor v. Thompson, 46 Ill. 214; Robinson v. Willoughby, 65 N. C. 520. (5) The fact that the indebtedness for which this quitclaim deed was given was secured by the deed of trust, can in no way militate against the subsequent transaction, and *ipso facto* convert it into an absolute sale. Chance v. Jennings, 159 Mo. 544; Book v. Beasley, 138 Mo. 455. (6) Defendant was bound in equity to expose plaintiffs' property for sale to the best advantage. Kelly v. Hunt, 61 Mo. 469; Chesley v. Chesley, 49 Mo. 540; Carter v. Obshine, 48 Mo. 300; Bank v. Stump, 73 Mo. 311.

*Stewart, Eliot & Williams* and *J. M. Blayney, Jr.,* for respondent.

(1) The weight of the evidence tends to establish that the parties intended to do what they did do, viz., execute an absolute sale with power of purchase. Turner v. Kerr, 44 Mo. 432; Focke v. Buchanan, 59 S. W. 820; Mellish v. Robertson, 25 Vt. 603; Rue v. Dole, 107 Ill. 275; Todd v. Campbell, 32 Pa. St. 254; Jones on Mortgages, sec. 256; Douglas v. Moody, 80 Ala. 66. (2) Where the deed is absolute in form the burden is cast upon the grantor to prove that it was intended to be a mortgage. To overcome the presumption arising from the form of the deed, the evidence must be clear and unequivocal, "leaving no room for a reasonable doubt as to the facts relied upon." These facts must establish a "concurring" intention of the parties. The understanding of the grantor alone is insufficient. Bobb v. Wolff, 148 Mo. 344; Worley v. Dryden, 57 Mo. 226; 3 Pom. Eq., sec. 1196; Jones on Mortgages, secs. 260, 335; West v. Hen-

drix, 28 Ala. 234; Kent v. Lasley, 24 Wis. 654; Adams v. Pilcher, 92 Ala. 475; Douglas v. Moody, 80 Ala. 66.

BRACE, P. J.—This is an appeal by the plaintiffs, in a suit in equity, from a judgment of the St. Louis City Circuit Court dismissing the bill at their cost at the close of their evidence. The plaintiffs are David Bailey and his wife, Mary Hunt Bailey. The substantive facts disclosed by the plaintiffs' evidence are as follows:

Prior to the 11th of December, 1897, the said David Bailey was the owner of five lots in the city of St. Louis, encumbered by two deeds of trust theretofore duly executed and acknowledged by him and his wife, and duly recorded; one for $35,000, dated December 20, 1892, and the other for $2,744.36, dated January 2, 1897, to secure a note of that date. Of this second deed of trust the St. Louis Union Trust Company, the defendant, was the holder and owner. Default had been made in this second deed of trust held by the Trust Company and the property had been duly advertised and was about to be sold thereunder on the 11th day of December, 1897, when the foreclosure was arrested by the plaintiffs executing and delivering to the Trust Company a quitclaim deed to the premises for the expressed consideration of $2,900, the real consideration being the abandonment of the foreclosure sale and the following agreement in writing, to-wit:

"Whereas, David Bailey and Mary Hunt Bailey, his wife, have by quitclaim deed of this date, conveyed to the St. Louis Trust Company the following real estate situated in the city of St. Louis, Missouri, to-wit: (Here follows a description of the lots.)

"Now, therefore, for value received, and in consideration of the conveyance aforesaid, the said St. Louis Trust Company contracts and agrees to reconvey said real estate to said David Bailey, provided the said David Bailey shall pay to it on or before May 1, 1898, all that he now owes or may then owe to it, on his certain

note, dated January 2, 1897 (secured by deed of trust recorded in recorder's office of the city of St. Louis in book 1363, at page 538), and also all other and further indebtedness which he may owe said company on any account whatsoever, including the expenses incurred in foreclosing said deed of trust.

"It is further mutually understood and agreed that the said St. Louis Trust Company may pay off and discharge any and all obligations of any nature that are or may become liens against said property, including taxes of all descriptions and costs of such repairs as said St. Louis Trust Company may make on said property, and when so paid, the same shall become part of the obligations to said St. Louis Trust Company which said Bailey is to pay to said St. Louis Trust Company before he shall be entitled to reconveyance of said property as aforesaid, and all sums of money now due or which may hereafter become due to said St. Louis Trust Company shall bear interest at the rate of six per centum per annum and become part of the obligations to said St. Louis Trust Company which said Bailey shall pay before he, the said David Bailey, shall become entitled to the reconveyance of said real estate, as aforesaid, net revenue collected by said company from said property to be credited upon said indebtedness, provided said settlement is made on or before May 1, 1898, if said indebtedness is not fully paid and discharged on or before May 1, 1898, then this agreement shall be absolutely void.

"In witness whereof, the said St. Louis Trust Company has caused these presents to be signed by its president, and its corporate seal to be hereto affixed by its secretary, and the said David Bailey has hereunto set his hand. All done the 11th day of December, A. D. 1897.

"Executed in duplicate.

"St. Louis Trust Company,

"By Thos. H. West, President.

"Attest:   JOHN D. FILLEY, Sec'y.
                    "DAVID BAILEY."

Thereupon the Trust Company entered into the possession of the premises, except one lot on which the plaintiffs resided, and thereafter managed and controlled the same as owners thereof with the knowledge and consent of the plaintiffs, paid the taxes and insurance upon all the property, placed the same in the hands of a firm of real estate agents for sale, and received the rents therefrom, except from the lot upon which plaintiffs resided, and, at intervals thereafter, rendered statements to the plaintiffs showing the receipts and expenditures on account of said property, the amount of said indebtedness, principal and interest, and the net amount due the Trust Company at the respective dates thereof.   The balance due the Trust Company on May 1, 1898, on such account being the sum of $3,583.60.   In the meantime, the plaintiff, David Bailey, had been making efforts to find a purchaser for the property; but failing to do so and being unable to comply with the terms of said agreement, he made application to the Trust Company for an extension thereof, which upon the payment of $1,000 by the said plaintiff, Mary Hunt Bailey, on said account, and the assignment by said David of his interest in the agreement, to her, was granted.   The extension and assignment were endorsed on the agreement, and are as follows, to-wit:

                    "St. Louis, May 27, 1898.

"For value received the within agreement is hereby continued in full force between the parties hereto, for a period of six months from this date; that is to say, the said David Bailey or his assignee, Mary Hunt Bailey, shall have the right to redeem the property described in the within contract, subject to its terms at any time prior to November 24, 1898.   By granting this extension, the St. Louis Trust Company is not to

forfeit or waive any rights acquired hereunder except as to extension of time.

"ST. LOUIS TRUST COMPANY,

"By JOHN D. FILLEY, Sec'y.

"For value received I hereby assign all my right, title and interest in the above to Mary Hunt Bailey.

(Signed.)            "DAVID BAILEY."

Thereafter the conduct of the parties continued the same as before until this extension expired, when Mrs. Bailey made application to the Trust Company for a further extension, which was granted, and is manifested in the evidence by the following letters:

"Dec. 7th, 1898.

"St. Louis Trust Company, City.

"Gentlemen: I acknowledge that you have been extremely kind and lenient in the matter of giving me considerable time on different occasions to redeem, for my own benefit, the several pieces of property covered by the two deeds of trust executed by my husband, David Bailey, one of the same being for $35,000 and interest, recorded December 23, 1892; the other being for $2,744.36 and interest, recorded February 11th, 1897.

"I believe that if you will give me the further time, until April 1st, 1899, to redeem the property above mentioned, that I will be able to do so, and in consideration of said extension I will promise that I will not request of you any additional time beyond said date, and will then be entirely satisfied with your realizing the money due on account of said above mentioned deeds of trust from any source that you find.

"Yours very truly,

(Signed.)   ,            "MARY H. BAILEY."

"St. Louis, Dec. 20, 1898.

"Mrs. David Bailey, 2628 Gamble St., City.

"Dear Madam: Enclosed find your copy of the agreement between this company, yourself and your

husband, duly extended as you requested, to April 1st, 1899.

Yours truly,

"St. Louis Trust Company,

Enclosure.        "By John D. Filley, Secretary."

In the meantime the Trust Company had purchased the first deed of trust, and in the statement of February 20, 1899, rendered to Mrs. Bailey, the amount of that incumbrance was carried into the account, making the whole amount of the indebtedness charged against the property at that date $40,532.58, as per said statement. Before the expiration of this last extension Mrs. Bailey made application to the Trust Company for a further extension, which the company declined to make and so definitely advised her by the following letter:

"St. Louis, June 26th, 1899.

"Mrs. David Bailey, 2628 Gamble St., City.

"Dear Madam: In reference to the property which we have been carrying for you for so long a time, I am instructed to advise you that we can not do so beyond July 1st, on which date we will be obliged to complete an arrangement which we have made for the disposal of all the property, and the payment of our debt.

"Yours truly,

"St. Louis Trust Company,

"By John D. Filley, Secretary."

On the first of July, 1899, the Trust Company rendered an account to Mrs. Bailey, showing the amount of the indebtedness to be $40,213.94, at that date, and this closed the dealings between the plaintiffs and defendant. The defendant held the property, however, until the first of September, 1899, when they sold and conveyed the same in bulk to C. L. Watson for about $41,000 (the amount of the indebtedness and taxes for that year). Afterwards C. L. Watson sold and conveyed the premises to the Watson Investment Com-

pany, by whom the property was afterwards sold and conveyed to other parties.

The evidence also tended to prove that Watson and the Watson Investment Company were cognizant of the agreement aforesaid, and that while the title was in them a suit was brought against them and the Trust Company by the plaintiffs, of which a notice *lis pendens* was filed, which suit was afterwards dismissed on the payment by Watson to plaintiffs of $500 and attorney's fee and costs. The nature of this suit is not disclosed by the evidence.

The evidence also tended to prove that the Watson Investment Company recovered possession of the lot upon which plaintiffs resided in an action in ejectment. After these suits were disposed of, the plaintiffs commenced this action in which they seek to recover the difference between what they allege was the true value of the property at the time it was sold by the Trust Company and which it would have brought if it had been sold under a decree of foreclosure by a court of equity, and the amount for which it was actually sold by the company; upon the theory that the quitclaim deed aforesaid was only an equitable mortgage. The trial court held that upon the facts disclosed by the plaintiffs' evidence this theory could not be maintained, and dismissed the bill, and in so doing, we think the chancellor ruled correctly. In support of this theory the learned counsel for the plaintiffs lays down many propositions and cites many authorities in support of them. With many of these propositions we have no fault to find—the fault with them as a whole, however, is that they do not reach this case. The character of this transaction is plainly and clearly expressed in written instruments prepared by the respective attorneys of the parties, learned in the law, after free and full consultation with their principals, who were experienced business men, and thereby nothing is left for doubt or inference. The deed is absolute on its

face—as to that there can be no doubt.  The agreement on its face is that the Trust Company will reconvey the premises to the said David Bailey upon the conditions therein stated, if these conditions are not performed, the agreement to be void.  That these instruments when taken together do not of themselves constitute an equitable mortgage is manifest.  They are simply an absolute conveyance and an agreement to reconvey upon condition.  If this absolute deed is a mortgage it is not so because of anything contained in it or in the agreement, but because of something outside of both by which the natural force and effect of these instruments must be controlled and varied.  There is but one thing that can be shown under all the authorities that could have that effect, and that is that the deed, though absolute in form, was in fact given as a mere security for a debt.  This may be shown in many ways, and, as indicated, in many cases, of which counsel for plaintiffs have cited quite a number.  The ultimate fact, however, in all the cases which converts an absolute deed into an equitable mortgage is that it was given merely as a security. The idea that this deed was given to the Trust Company as a mere security for their debt and was intended to be merely an equitable mortgage that would have to be foreclosed by a proceeding in a court of equity, is not only repugnant to its terms, and those of the cotemporary agreement, but is negatived by all the circumstances attendant upon their execution and the conduct of the parties thereafter.  At the time they were executed the defendant had a deed of trust on the property to secure its debt and it is sheer nonsense to suppose that they would have exchanged this better form of security for such a mortgage.  In fact it was to prevent a foreclosure sale under that better security then impending that the deed was made, in order that thereafter the property might be sold by the Trust Company at private sale without the necessity of any foreclosure.  We know of no principle

of law or equity that forbids the making of such a contract. The purpose to vest an absolute title to the property in the Trust Company by the deed and thereby obviate the necessity of a foreclosure of any kind is manifested alike by the written instruments, the circumstances under which they were executed, and the conduct of the parties. Hence the chancellor held that the deed was not an equitable mortgage and did not err in so ruling. The judgment of the circuit court will, therefore, be affirmed.

All concur, except *Marshall, J.,* not sitting.