DONOHOE, ET AL., APPELLANTS, v. LANDOE, RESPONDENT.

No. 9082.

Submitted May 6, 1952. Decided December 12, 1952.

251 Pac. (2d) 560.

352

Mr. D. A. Nash, Mr. Michael J. O'Connell, Bozeman, Messrs. Loble & Loble, and Mr. Gene A. Picotte, Helena, for appellants.

Mr. H. B. Landoe, Mr. Joseph B. Gary, Bozeman, for respondent.

Mr. O'Connell, Mr. Lester H. Loble, Mr. Picotte, Mr. Landoe and Mr. Gary argued orally.

MR. JUSTICE ANGSTMAN:

This action was brought to have a deed to certain described real property adjudged to be a mortgage and for an accounting of rents and profits. The case was tried to the court without a jury.

The facts giving rise to the controversy as shown from the evidence and findings of fact and conclusions of law made by the court may be briefly stated as follows. The land in question was purchased by the plaintiffs on the 11th day of July 1945 for the sum of $11,475. Of this amount $8,865 was borrowed by the plaintiffs from Charles W. Osborne and a mortgage was given to Osborne to secure the payment of two notes, one in the sum of $6,000 and the other in the sum of $2,865. The $2,865 note was also secured by a chattel mortgage on the crops growing on the land. The $2,865 note was made payable on November 1, 1945, whereas the $6,000 note was made payable on July 11, 1950. The real estate mortgage contained an acceleration clause giving Osborne the option to consider the whole of the principal sum expressed in the notes as immediately due and payable upon default in the payment of the principal or interest.

On April 10, 1946, plaintiffs, being in default in payments on the notes, entered into an agreement with Osborne to convey the premises to him for the amount of the indebtedness, principal and interest, and upon that date plaintiffs executed a warranty deed to Osborne conveying the premises to him. On the same day Osborne executed a sales contract by which he agreed to sell the premises to the plaintiffs for the sum of $9,696.94 to be paid on or before November 1, 1946. This amount was the principal and interest then due on the notes. The agreement provided that upon the payment of that amount Osborne would convey the premises to plaintiffs. The agreement recited that the mortgages executed by plaintiffs to Osborne would be released. It provided that time was of the essence of the agreement and that if the plaintiffs should fail to pay to Osborne the purchase price as agreed to on or before November 1, 1946, the agreement would be automatically terminated and Osborne

might then demand possession of the premises without further notice or legal process of any kind.

No payments were made on the contract to purchase on or before November 1, 1946, or at any time, and in consequence Osborne on or about the 1st day of March 1947 took possession of the premises. He thereafter paid the taxes on the property and otherwise treated the property as his own, receiving income therefrom in the way of crops, all without any remonstrance from plaintiffs except that plaintiff J. F. Donohoe testified:

"Q. Now, after January 29, 1947, what did you do relative to discussing this matter with Mr. Osborne as to what interest, if any, you still had in the place? A. I think I talked to him, I don't know how many times, but a number of times, and told him that he hadn't taken possession according to law, and I thought I still owned the place. He took possession without any process of law—never even told me he was going to.

"Q. You mean he took possession by leasing it to someone else? A. Yes."

Plaintiffs did not at any time make their home upon the property in question but resided at all times in the city of Bozeman, where they conducted the county scales. Plaintiffs at no time exercised or attempted to exercise any dominion over the property in question after November 1, 1946, until early in the year 1949, except that plaintiffs on January 29, 1947, filed a judgment for possession of the property which judgment was obtained in April 1946 in an action against Sims Beck, a tenant.

The court found that the contract of sale was entered into with full understanding as to the intent on the part of both parties and that there was no fraud or mistake of any kind and that the consideration for the purchase of the property by Osborne was not disproportionate to the value of the property. The court further found that the relationship of mortgagor and mortgagee between plaintiffs and Osborne ceased on the 10th day of April 1946 when plaintiffs conveyed the property to Osborne and received a contract to repurchase it. The court

found that the agreement to release the liens of the mortgages contained in the contract of sale was equivalent to a statement that the debt secured by the mortgage was satisfied and paid. It found against the plaintiffs and concluded that the deed was not intended as a mortgage but that it conveyed the premises to Osborne as it purported to do on its face.

The action was originally brought against Charles S. Osborne as defendant, but he died before the case came on for trial, and Mr. Landoe, as executor of the estate of Charles W. Osborne, was substituted as a party defendant. There are many assignments of error relied upon by plaintiffs but the principal contention is that the evidence shows that the deed given by them to Osborne was intended to be a mortgage. In approaching a consideration of the questions before us we keep in mind that the burden of proof is on him who alleges that a deed absolute on its face is a mortgage to establish the fact by clear and convincing evidence. Lewis v. Bowman, 113 Mont. 68, 121 Pac. (2d) 162; Elling v. Fine, 53 Mont. 481, 164 Pac. 891, Ann. Cas. 1918C, 752. This is the rule also in other jurisdictions. 59 C. J. S., Mortgages, sec. 53, p. 93.

As to the burden of proof, Murray v. Butte-Monitor T. M. Co., 41 Mont. 449, 110 Pac. 497, 112 Pac. 1132, held that the usual rule that the person asserting a deed to be a mortgage has the burden of proof is not applicable to a situation where there is a contemporaneous agreement to reconvey. Here we have such an agreement to reconvey, but this case differs from the Murray Case in that here there was a mortgage on the very property in question in existence when the deed was made. If the deed was not what it purports to be, then it is difficult to conceive of any purpose in making the deed and contract to reconvey.

Plaintiff stated that when Osborne threatened foreclosure of the mortgage he stated to him: "There is no use in foreclosing because that costs money, but I will give you a deed for the place if you will give me back the contract for one year so that I can sell it or pay you."

The cost of foreclosure was not avoided if the deed is still a mortgage. Under plaintiff's own statement as to the purpose of the deed, the court did not err in holding it was what it purports to be.

The record shows that plaintiffs themselves made the proposal to Mr. Osborne that he accept a deed and give them a contract to repurchase. The plaintiffs seemingly understood the transaction fully. On cross-examination Mr. Donohoe testified:

"Q. Since April 11, 1946, Mr. Donohoe has never come to you and asked for any money? A. Mr. Osborne?

"Q. Yes. A. He never did.

"Q. And no one else in his behalf has come to you and told you that you owed Mr. Osborne any money? A. No, they never did. * * *

"Q. I am talking about after November 1, 1946, after this contract of sale was consummated, Mr. Osborne has never come to you and said you owed him anything? A. No, he never did.

"Q. And no one else on his behalf ever claimed that you owed him anything? A. No, he claimed the ranch; he claimed he bought the ranch.

"Q. That's right, he bought the ranch and claimed that to you didn't he, and you understood that perfectly? A. I understood that he bought it with the condition that he gave me the contract back to sell it, of course."

Plaintiffs contend that the deed was intended to be a mortgage because of the fact that the antecedent indebtedness was not extinguished but continued. The court was warranted in finding that the mortgages were no longer a lien on the property since the agreement recited that the mortgages would be released, and correctly concluded that this was equivalent to a statement that the debt secured by the mortgages was fully paid. Likewise the record shows that Mr. Osborne signed the notes in question as having been fully paid. Mr. Landoe also testified that it was the intention that a satisfaction of the mortgages should have been filed and the notes delivered to the

plaintiffs but that the omission to do so was because of his negligence.

In this respect the case is unlike that of Gibson v. Morris State Bank, 49 Mont. 60, 140 Pac. 76, relied upon by the plaintiffs. In that case the grantee recognized the existing indebtedness as a continuing one after the execution of the deed, endorsed credits on the notes representing the indebtedness and even instituted proceedings to foreclose the mortgage. Here there was ample evidence from which the court was warranted in concluding that the antecedent indebtedness was cancelled at the time the deed in question was given and that the failure to surrender the notes was due to an oversight merely. The case is comparable to that of Acme Brick Company v. Jacobi-Erdman, Inc., 235 Wis. 539, 292 N. W. 453, 456, where a similar contention was made under like circumstances. There the court said:

"The plaintiff particularly contends that the introduction of parol evidence was permissible and that the testimony of Jacobi shows without dispute that the mortgage was neither released nor satisfied of record, that the original $32,000 note was not in fact turned over to the plaintiff and that as a result the indebtedness of the plaintiff, evidenced by the $32,000 mortgage, was not discharged or satisfied. One of the facts which courts carefully scrutinize in such transactions is whether the mortgage indebtedness was discharged, or whether a binding agreement was entered into which provided that such indebtedness should be considered paid and discharged. Paul v. Smith, supra [215 Wis. 613, 255 N. W. 919]. The plaintiff's contention, when applied to the facts of this case, is not controllingly persuasive, since the contract of March 31, 1938, specifically referred to the $32,000 mortgage and provided: 'The purchase price consists of as follows—The mortgage they are now holding, amounting to $32,000.'

"When the agreement was carried out by delivery of the deed and lease containing the option, it is clear that the de-

fendant had no shadow of a valid claim against the plaintiff under the $32,000 note and mortgage.''

That the retention of the evidence of the pre-existing debt is subject to explanation was expressly held in Gibson v. Morris State Bank, supra.

The Supreme Court of Missouri in Bailey v. St. Louis Union Trust Co., 188 Mo. 483, 87 S. W. 1003, 1005, expressed the view which we think is persuasive here, when it said: ''The idea that this deed was given to the trust company as a mere security for their debt, and was intended to be merely an equitable mortgage that would have to be foreclosed by a proceeding in a court of equity, is not only repugnant to its terms, and those of the contemporary agreement, but is negatived by all the circumstances attendant upon their execution and the conduct of the parties thereafter. At the time they were executed, the defendant had a deed of trust on the property to secure its debt, and it is sheer nonsense to suppose that they would have exchanged this better form of security for such a mortgage. In fact, it was to prevent a foreclosure sale under that better security then impending that the deed was made, in order that thereafter the property might be sold by the trust company at private sale without the necessity of any foreclosure. We know of no principle of law or equity that forbids the making of such a contract. The purpose to vest an absolute title to the property in the trust company by the deed, and thereby obviate the necessity of a foreclosure of any kind, is manifested alike by the written instruments, the circumstances under which they were executed, and the conduct of the parties. Hence the chancellor held that the deed was not an equitable mortgage, and did not err in so ruling.''

If there is no debt left to be secured as here, then obviously there would be no occasion for any security. Morrison v. Jones, 31 Mont. 154, 77 Pac. 507. There being no existing indebtedness, the instruments must be taken as they purport to be on their face, viz., a conveyance amounting to a sale with the option in plaintiffs to repurchase. Ferguson v. Blanchard, 220 N. C.

1, 16 S. E. (2d) 414; Embry v. Villines, 175 Okl. 552, 53 Pac. (2d) 277; Brumick v. Morris, 131 Fla. 46, 178 So. 564; Schroeder v. Bàrtlett, 129 Neb. 645, 262 N. W. 447; Roberson v. Keck, Tex. Civ. App., 135 S. W. (2d) 256; and see other cases cited in note in 155 A. L. R., pp. 1123, et seq.

The rule is stated in 1 Jones on Mortgages, sec. 316, pp. 386, 387, as follows: ''The existence of the debt is the test. If an absolute conveyance be made and accepted in payment of an existing debt, and not merely as security for it, an agreement by the grantee to reconvey the land to the grantor upon receiving a certain sum within a specified time does not create a mortgage, but a conditional sale, and the grantee holds the premises subject only to the right of the grantor to demand a reconveyance according to the terms of the agreement.''

And in 1 Jones on Mortgages, sec. 318, pp. 396, 398, it is stated: ''Where an absolute deed is executed in consideration of a precedent debt, accompanied by an agreement to reconvey to the grantor upon payment of the consideration, a decisive test whether the transaction constitutes a mortgage or a conditional sale is found in the question whether the debt was discharged by the deed or subsisted afterward. An absolute deed delivered in payment of a debt is not converted into a mortgage merely because the grantee therein gives a contemporaneous stipulation binding him to reconvey, on being reimbursed, within an agreed period, an amount equal to the debt and the interest thereon. If the conveyance extinguishes the debt and the parties so intend, so that a plea of payment would bar an action thereon, the transaction will be held an absolute or conditional sale, and not a mortgage.

''* * * The test, therefore, in cases of this sort, by which to determine whether the conveyance is a sale or a mortgage, is to be found in the question whether the debt was discharged or not by the conveyance. If in the subsequent transactions of the parties there is no recognition in any way of the relation of debtor and creditor, and the vendee for a considerable period holds possession without paying interest or rent, these facts

go to show that there is only an agreement for repurchase and not a mortgage.''

Another case which is practically the same as this is that of Kimmel v. Bundy, 302 Ill. 514, 135 N. E. 56. There, as here, a deed or contract to repurchase was executed. The prior mortgage and notes were not surrendered. The court in that case said: ''Where premises are conveyed in satisfaction of a mortgage debt so that no recovery can be had on the original debt, the transaction must be regarded as an absolute sale notwithstanding the grantee may execute a contract for resale to the grantor within a given time. Rue v. Dole, 107 Ill. 275. One claiming a deed absolute in form is a mortgage must establish it by clear and convincing proof. Williams v. Williams, 180 Ill. 361, 54 N. E. 229; Rankin v. Rankin, 216 Ill. 132, 74 N. E. 763.

''It is contended that appellee retained possession of the notes and mortgage of appellant which he held when the deed was made, and that circumstance shows the debt was not satisfied by the conveyance. The notes and mortgage were not delivered to appellant when he made the deed. He testified appellee promised to send them by mail but did not do so, and appears never to have made any demand or request for them. It is difficult to understand why appellee promised to send them to him if they represented an existing indebtedness. In addition to that, appellee testified positively they were paid by the conveyance, and so far as the evidence shows their payment was never afterwards mentioned by either of the parties. The proof shows the consideration paid was the full value of the land at the time. Appellant had possession of the land under the contracts with appellee four years during which time he never paid any taxes although he agreed to. The land was not of much rental value and he never agreed to pay any rent. He appears to have voluntarily given up possession of the land and after doing so waited some three and a half years before bringing suit. It does not appear from the evidence that he made claim that the deed was a mortgage until he brought the suit. It is certain

appellant's evidence did not make a case which entitled him to the relief claimed or any part of it.''

Plaintiffs also contend that if the deed and agreement to ▆ resell are what they purport to be, then they are void as in conflict with R. C. M. 1947, sec. 45-112, which reads: ''All contracts for the forfeiture of property subject to a lien, in satisfaction of the obligation secured thereby, and all contracts in restraint of the right of redemption from a lien, are void.''

California has an identical statute and it has been repeatedly held that: ''This rule does not apply, however, to transactions after the execution of the mortgage respecting the title to the mortgaged premises; a mortgagor may sell and convey all his right and interest in the mortgaged premises to the mortgagee, where the transaction is fair, honest and without fraud, and where no unconscionable advantage has been taken of his position by the mortgagee.'' 16 Cal. Jur., Liens, sec. 47, p. 349, and cases there cited.

The rule governing here is that: ''A present release of the equity of redemption at any time subsequent to the original transaction is valid.'' Note in 24 A. L. R. 829, and cases there cited. This principle was given recognition by this court in the case of Bowen v. First State Bank, 69 Mont. 223, 221 Pac. 527.

Plaintiffs contend that the consideration for the deed was ▆ inadequate and that this is a circumstance from which the court should conclude that the deed was intended to be a mortgage. The court made this specific finding. ''The consideration for the purchase, according to the testimony was not disproportionate to the value of said premises as evidenced by the testimony, particularly in the light of the testimony that the buildings and fences were in disrepair, and that the land had been permitted to become foul for lack of farming and cultivation.''

The evidence showing the value of the land at the time the deed was made was in conflict. There was sufficient evidence to sustain the trial court's finding and we see no justification for disturbing the finding of the court in this respect.

Plaintiffs contend that the transaction cannot be regarded as ██ a sale unless there be fresh consideration for the deed. This is not the rule. Doggett v. Johnson, 82 Mont. 338, 267 Pac. 292. The consideration is the discharge of the prior indebtedness and cancellation of the lien. Harmon v. Grants Pass Banking & Trust Co., 60 Or. 69, 118 Pac. 188.

Plaintiffs contend that they could have been compelled to pay the amount specified in the contract of purchase, and this being so that the transaction must be held to be a mortgage and not a conditional sale within the rule stated in 59 C. J. S., Mortgages, sec. 10, p. 34. The case of Alexander v. Wingett, 63 Mont. 254, 206 Pac. 1088, and Wandell v. Johnson, 71 Mont. 73, 227 Pac. 58, are relied on as sustaining the view that plaintiffs could have been compelled to pay the amount specified as the purchase price. We think the agreement fairly construed and when considered in the light of the previous dealings of the parties, and particularly since the deed and contract to purchase were to take the place of the pre-existing mortgage, was merely to give plaintiff the option to purchase the property and that it automatically terminated by its own terms upon default. Compare: Holuba v. Floersch, 142 Kan. 601, 50 Pac. (2d) 1004; Charter Gas Engine Co. v. Entrekin, 30 Ariz. 341, 246 Pac. 1038.

Contention is made that the court erred in the admission and ██ exclusion of certain evidence. We have carefully considered these questions and find no reversible error in the rulings of the court. If any error were committed it was harmless. The evidence which was excluded by the court was not such as would call for a different conclusion. Likewise if there were error in receiving certain evidence, such evidence was not of such character as to affect the result.

Finding no reversible error in the record, the judgment is affirmed.

The opinion promulgated on August 6, 1952, is withdrawn and this opinion substituted in its stead. The petition for rehearing is denied.

ASSOCIATE JUSTICES METCALF, BOTTOMLY and FREEBOURN, concur.

MR. CHIEF JUSTICE ADAIR:

I dissent. In my opinion, the law as stated by this court in Gibson v. Morris State Bank, 49 Mont. 60, 140 Pac. 76, is here controlling.