FARMERS UNION TRADING CO. OF SHERIDAN, APPELLANT, v. WIGGINS, RESPONDENT.

No. 9255.

Submitted November 25, 1953. Decided February 26, 1954.

267 Pac. (2d) 117.

Messrs. Maury, Shone & Sullivan, Mr. H. Loundes Maury, Butte, for appellant.

Mr. Ralph J. Anderson, Helena, Mr. Frank E. Blair, Virginia City, for respondents.

Mr. Maury and Mr. Anderson argued orally.

MR. JUSTICE BOTTOMLY:

This is an appeal by plaintiff from a judgment for defendant and against plaintiff entered in the instant cause on August 22, 1952.

January 2, 1937, plaintiff purchased from W. N. Lenkersderfer and Ida P. Lenkersderfer the real estate concerned in this suit and described as the south fifty-one feet of lot numbered five and the south fifty-one feet of lot eleven in block six in the town of Sheridan, Madison County, Montana, according to the official amended plat of said town, now on file in

the office of the county clerk and recorder in Virginia City, Montana, together with all the appurtenances, hereditaments and covenants, paying part of the purchase price in cash and promising to pay the balance on or before January 7, 1952.

December 21, 1938, Charles Wiggins loaned plaintiff the sum of $5,500 so that plaintiff could complete the purchase and receive deed for the above described property, taking from plaintiff its promissory note in said sum with interest at 6 percent per annum payable annually, and as security for the payment thereof plaintiff executed its real estate mortgage on the property, which mortgage contained covenants that plaintiff was to pay all taxes, interest, premiums for full fire insurance coverage on the buildings now or thereafter erected on the property and an acceleration clause in case of default in any particular.

The plaintiff defaulted in its payments of interest in several hundred dollars and in the payment of insurance premiums. In fact the record shows that no interest was paid on the note. Plaintiff also failed to pay any taxes levied against the property, and on June 5, 1942, Charles Wiggins filed an action to foreclose his mortgage and had summons issued and served.

The mortgagor did not desire to have the mortgage foreclosed with the prospect of a deficiency judgment. Negotiations were then instituted between the mortgagor corporation through its board of directors and Wiggins, the mortgagee, to forestall the foreclosure.

At a special board meeting of the mortgagor corporation on July 7, 1942, the following minutes thereof were set down by secretary J. S. Fenton:

"Special Board meeting held in room 3 of garage. Hugo Christianson visiting. Members present: A. J. Kallgren, J. S. Fenton, O. C. Smith, Guy Bower, Alfred Sill, Mrs. C. Campbell, Frank Baril, Jr., Earl Nyhart, (Mrs. J. L. Nyhart), P. J. Simonsen, C. J. Cox, Chas. Wiggins, Ira A. May.

"Meeting called to order by Pres. A. J. Kallgren explained purpose of meeting. Discussion opened on financial condition

of company. Assets and liabilities summed up by H. Christianson. He stated that exchange will demand receivership in case of liquidation, Wiggins stated that he would throw off $1000.00 if the money could be raised to pay him.

"Proposition suggested by H. Christianson that Wiggins stop proceedings and company deed mortgaged property to him and sign an agreement to pay deficiency by paying a percentage out of net earnings; continuing to do business by renting from him.

"Kallgren appointed C. J. Cox, Earl Nyhart, Alfred Sill and Hugo Christianson to meet with Wiggins.

"Moved by May, 2nd Baril, that chair appoint a committee to meet with Wiggins and work out details of deeding property over and renting from him thereafter.

"Motion carried.

"Kallgren appointed Mrs. Campbell and Christianson to meet with Wiggins and attorney Blair to get legal advice for the above named committee which agreed to meet in the afternoon tomorrow.

"J. S. Fenton, Secretary."

July 8, 1942, another special board meeting was had and the minutes thereof are as follows:

"Sp. Board meeting held at Mrs. Campbell's home. Members present: Smith, Morse, Mrs. Campbell, Kallgren and Fenton. (Hugo Christianson, Mgr. Baril, Messrs. Smith, Kallgren and Fenton visiting.)

"Meeting opened for discussion of proposition presented by the Sp. Committee. After first reading it was again read and acted on a paragraph at a time. (1st) The rental of $70.00 a month for all the building, except the shop, was discussed and approved.

"(2) The accounts receivable was discussed and moved by Smith that accounts or a part of as the last audit (over 6 months), be discounted 40% if paid by October 1, 1942. 2nd by Morse. Motion carried.

"(3) Giving chattel mortgage to someone to avoid an attachment discussed. Consult an attorney.

"(4) Raising additional capital as recommended is approved.

"(5) Matter of sending out ballots, waiver and resolution authorizing board to act in all legal matters.

"Moved by Morse, 2nd by Smith, that the minutes of the Committee be adopted and carried out; also that the Board appreciates their work and extend them a vote of thanks. Motion carried.

"Secretary instructed to inform Wiggins of the Board's action and send him a copy of minutes so that he can inform his attorney accordingly.

"J. S. Fenton, Secretary."

At a later time, July 8, 1942, another special meeting was held, the minutes thereof being as follows:

"Minutes of special committee appointed by the Chairman at the special stockholders' meeting held at the Farmers Union Trading Co. in Sheridan to confer with Chas. Wiggins to discuss the matter of dropping foreclosure proceedings and working out a rental basis. Committee meeting attended by C. J. Cox, Alfred M. Sill, Lester Nyhart, Charles Wiggins and Hugo Christianson.

"After considerable discussion Mr. Wiggins agreed that if the building was deeded to him that he would rent the entire building with the exception of shoproom now occupied by Mr. Ellinghouse to the Farmers Union Trading Co. for $70.00 per month. Mr. Ellinghouse to have access through the garage to shop in rear. Motion made by Mr. Sill and seconded by Mr. Cox and was unanimously carried.

"Discussion was had relative to the back interest and insurance and taxes paid by Mr. Wiggins and how the payments should be made. Mr. Wiggins made the statement that as far as he was concerned, those bills should be dropped, but that whatever expense is incurred by Mr. Wiggins on foreclosure proceedings and stopping it, and also to complete papers necessary to transfer title should be paid back to him as soon as possible out of net earnings of the Company.

"Mr. Nyhart made a motion, seconded by Mr. Cox, that this

be paid by the Trading Company and extended a vote of thanks to Mr. Wiggins for his generous attitude in making settlement. Motion carried.

"Discussion was had urging the importance of collecting in some of the old accounts and make adjustment, if possible, but to contact them and at least try to win back their patronage and confidence in the Union.

"Discussion was had relative to giving a mortgage to some one (Fred McCrea being mentioned), to tie up all chattels including hotel fixtures, office fixtures, inventory and equipment to prevent other creditors from bringing action to force collection on their accounts. Directors are urged to take immediate steps to take care of this matter and preferably consult some legal advice.

"Discussion was also held relative to raising some additional capital to supplement the inventory and any stock that may be consigned by wholesalers. It was suggested that the Board find ways and means of contacting stockholders in an effort to raise at least $10.00 a share in addition to what they already had; all members of the committee, including Mr. Wiggins were in accord with this plan.

"Motion by Mr. Sill, seconded by Cox, that the Board take immediate steps to prepare and circulate ballots and waiver of notices so that deed can be transferred at the earliest possible date.

"Motion by Nyhart, seconded by Cox, to adjourn.

"Hugo Christianson, Acting Secretary.

"P. S. It was further stated by Mr. Wiggins that at any time within a reasonable length of time, if the company wishes to buy back the building or if another buyer is found, they can have the building for the face of the mortgage and what additional expense would be put on in the meantime.."

July 23, 1942, a meeting of the board of directors was had as to waiving the nature of and the time and place of the meeting and the business to be transacted was duly executed. The meeting was called to order by vice president A. J. Kallgren. The minutes of that meeting recite in part as follows: "The matter

of the mortgage foreclosure action now pending against the company and its business property was brought up and thoroughly discussed. Mr. J. S. Fenton presented a resolution dealing with the problem. This resolution was thoroughly discussed. Upon motion duly made, seconded and *unanimously carried* said resolution was adopted: * * *

"Whereas, on December 21, 1938, the Company gave its promissory note to Charles Wiggins in the principal sum of $5,500.00 due ten years after date bearing six percent interest payable annually, and secured the same with a real estate mortgage upon the property hereinafter described which is the business location of the company, which said mortgage contained an acceleration clause permitting foreclosure in event of non-payment of interest and other charges, and

"Whereas, on June 25, 1942, no interest had been paid to Charles Wiggins upon said note and said Charles Wiggins in order to protect his security had been compelled to advance funds to pay several years' taxes and premiums for fire insurance, all of which the Company had agreed to pay, * * *

"Whereas, the property of the company described in said mortgage has decreased in value to the point where it cannot be sold for a sum sufficient to pay said mortgage indebtedness and in the event of an involuntary sale of the said property the Company would in all probability be subject to a deficiency judgment, the levy of which would put it out of business,

"Whereas, there is justly due from the Company on said note and mortgage to said Charles Wiggins a sum in excess of $7,-339.03 and costs of suit, and the Company is unable to pay the same now or at any time in the foreseeable future, and the said Company is insolvent and unable to meet its obligation, * * *

"Whereas, said Charles Wiggins has offered to accept an absolute transfer and deed of said property to him as well as of the equity of redemption therein in full satisfaction of all claims against the Company, and to dismiss said action upon the merits in conformity herewith, as well as to give the Company a five year lease upon said business property exclusive of the shop

therein, predicated upon the prompt payment of a monthly rental therefrom on the first day of each month in advance in the sum of $70.00, and

"Whereas, this offer considerately made on his part, provides the only way that the Board of Directors can, after having consulted with a majority of all the stockholders, salvage the affairs of the Company and keep it running as a going concern, and providing the basis for a reasonable hope of giving the officers an opportunity to pay the Company's obligations in course of time." Emphasis supplied.

It was there resolved that said conveyance be made to Charles Wiggins; that he dismiss forthwith his foreclosure suit; that said conveyance is to be in full satisfaction of all claims of whatever kind, nature and description owed by the company to said Charles Wiggins; that Charles Wiggins execute and deliver contemporaneously with the execution and delivery of said deed and conveyance a lease for the term of five years upon said property to the company, at a monthly rental of $70.00 per month payable in advance. This resolution was executed by the directors of the corporation, attested by the secretary J. S. Fenton. It was then unanimously voted that vice president A. J. Kallgren and the secretary J. S. Fenton execute the conveyance described in the foregoing resolution and the agreement with Charles Wiggins, a copy of each of which were presented for inspection to the board, and the form of the same was approved, as was likewise the lease described in said resolution, upon motion duly made, seconded and carried, and the meeting adjourned. This instrument was executed as follows:

"A. J. Kallgren, Vice President

"Corporate Seal

"J. S. Fenton, Secretary."

There was then entered into a memorandum agreement between Farmers Union Trading Company, a cooperative corporation, of Sheridan, Montana, as party of the first part, and Charles Wiggins, of the same place, as party of the second part, again reciting that on account of the grave financial condition

of the company, it is for its best interest to deed said property by absolute deed, together with the equity of redemption, to Charles Wiggins in full payment of the principal sum, accrued interest, money advanced for back taxes and fire insurance premiums, attorney's fees, court costs and other costs therein. This agreement was executed by Farmers Union Trading Company, a cooperative corporation, by A. J. Kallgren, president, attested by J. S. Fenton, secretary, over the corporate seal, party of the first part, and Charles Wiggins, party of the second part.

On the same day, July 23, 1942, the company by its president A. J. Kallgren, and J. S. Fenton, its secretary, and under the corporate seal, executed an absolute warranty deed to Charles Wiggins, of all the described real property, ''Together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining as well as all equity of redemption. To have and to hold the aforementioned and described premises unto the said party of the second part, his heirs and assigns forever. That said party of the first part, and its successors in interest do hereby covenant that they will forever warrant and defend all right, title, and interest in and to said premises and the quiet and peaceable possession thereof unto the said second party, his heirs and assigns against all acts and deeds of the said party of the first part and every person whomsoever lawfully claiming or to claim the same.''

At the same date, July 23, 1942, a lease on said property was executed by Charles Wiggins, as lessor, to the company, as lessee, for a term of five years, excepting therefrom the repair shop with ingress and egress for customers and the tenant of the shop, at the monthly rental of $70 per month, this lease being so executed by Charles Wiggins as lessor and Farmers Union Trading Company, lessee, by A. J. Kallgren, president and J. S. Fenton, secretary, corporate seal attached.

The plaintiff at the trial and in its brief on this appeal contended that there was another agreement entered into in writing at the same date, July 23, 1942, between the parties wherein and

whereby Charles Wiggins agreed with the company that the company could if it wished to, buy back the building or property for the face of the mortgage, plus any additional expense that Wiggins would be put to in the meantime, or an agreement to that effect. Also the plaintiff in its brief contends that said warranty deed should be considered a mortgage and asserts, "We think the result is the same in equity, whichever it was. The evidence shows that it was both."

The contention is without merit. See Donohoe v. Landoe, 126 Mont., 351, 251 Pac. (2d) 560, and cases cited therein.

Here the plaintiff waited two years after Charles Wiggins had died before making any claim that the warranty deed duly executed and delivered was other than a deed. Plaintiff's president testified that there was an agreement to allow plaintiff to buy back the property and that he placed such agreement with the abstract of the property in the corporation's safe in its office, but admitted that the safe was left unlocked; that Charles Wiggins had access thereto; that he and other persons of the community loafed in the office and intimates that Charles Wiggins may have stolen both the agreement and abstract. All these accusations came after the cold hand of death has sealed the lips of Wiggins, leaving only his widow to defend against the charges. No such written contract or agreement was produced and the only evidence the plaintiff offered in attempting to establish that there was such a purported lost or stolen agreement or option to repurchase was the oral testimony of interested persons, all of whom were either agents, stockholders or officers of the corporation, and such evidence was of an event purporting to have taken place some four years before, and was conflicting in nature, all of which is in direct conflict with all of the many produced and introduced written instruments and documents.

It is significant that in none of the many written and executed documents of the varied transactions introduced in this suit is there the least intimation or scintilla of evidence or even mention of any contract, agreement or option to repurchase or of any thought or intimation that the absolute deed was or should be

considered a mortgage. In that connection an inspection of the warranty deed shows that it has affixed thereto federal documentary stamps, equivalent to the consideration therefor, and each stamp is cancelled by the letters and figures "FU 7/24/42." No documentary stamps are needed or required to be affixed to a mortgage or a deed purporting on its face to be an equitable mortgage.

As to the witnesses so testifying as to statements made by or acts of Charles Wiggins some four years before his death, this court speaking through Chief Justice Callaway in Marcellus v. Wright, 65 Mont. 580, 594, 212 Pac. 299, 302, has stated: "While undoubtedly the power to admit and reject such testimony is reposed wisely in the sound discretion of the trial court, it cannot be too careful in exercising that discretion. Every judge has observed the freedom with which a witness testifies who knows he cannot be contradicted. Courts should scrutinize with more than usual care the quality of proof presented in such cases, and when the testimony relates to oral communications between the witness and the deceased, it must be viewed with caution." Chief Justice Brantly, in commenting upon such evidence, said: "Speaking generally, this character of evidence is the weakest and least satisfactory of any in persuasive value. 'With respect to all verbal admissions, it may be observed that they ought to be received with great caution. * * *' 1 Greenleaf on Evidence (16th Ed.), sec. 200." Escallier v. Great Northern Ry. Co., 46 Mont. 238, 127 Pac. 458, 461, Ann. Cas. 1914B, 468. See Sharp v. Sharp, 115 Mont. 35, 139 Pac. (2d) 235; Cox v. Williamson, 124 Mont. 512, 227 Pac. (2d) 614, and cases cited therein. Compare Herbert v. Lankershim, 9 Cal. (2d) 409, 71 Pac. (2d) 220, 251.

The burden was upon the plaintiff to prove one or the other ▆▆ of its contentions by clear and convincing proof. This, we think, it has failed to do. The idea that this warranty deed was given to Wiggins as a mere security for the corporation debt and was intended as an equitable mortgage is repugnant to its terms and those of the contemporary agreements and is con-

trary to all of the circumstances attendant upon their execution and the conduct of the parties at the time and for a long time thereafter. The same may be said as to the contention of plaintiff in regard to the alleged lost or stolen option to repurchase. How easy it would have been to have incorporated in the deed or one of the resolutions, or agreements or lease, such a provision if it had been the intention of the parties.

Plaintiff specifies as error the entering of judgment against it and the failure of the trial court to order an accounting and to require the execution and delivery to plaintiff of a deed upon the payment by it of a sum certain.

Here no findings of fact were either made or requested and hence we apply the long established rule that ''every finding necessary to support the judgment of the court will be implied.'' Steiner v. McMillan, 59 Mont. 30, 195 Pac. 836, 837; In re McLure's Estate, 63 Mont. 536, 208 Pac. 900; Town of Cascade v. County of Cascade, 75 Mont. 304, 243 Pac. 806; Clark v. National Surety Co., 81 Mont. 113, 261 Pac. 618; Sawyer v. Somers Lumber Co., 86 Mont. 169, 282 Pac. 852; Blaser v. Clinton Irrigation District, 100 Mont. 459, 53 Pac. (2d) 1141; Whitcomb v. Koechel, 117 Mont. 329, 158 Pac. (2d) 496.

There is ample evidence in the record to sustain the trial court's judgment and finding no reversible error such judgment is affirmed.

MR. JUSTICES FREEBOURN, ANGSTMAN and ANDERSON, concur.

MR. CHIEF JUSTICE ADAIR:

I concur in the result but not in all that is said in the above opinion.