324

ELSIE GRANT, Plaintiff and Appellant, v. JACOB PAT-
TISON, AMANDA PATTISON, WILLIAM R. PATTISON,
MRS. WILLIAM R. PATTISON, LYMAN J. PATTISON,
MARY PATTISON and LEO M. PATTISON, Defendants
and Respondents.

No. 10356.
Submitted April 4, 1962. Decided May 28, 1962.
371 P.2d 870.

Vernon Hoven (argued orally), Missoula, O. M. Astrup,
Missoula, for appellant.

Hall, Alexander & Kuenning, Great Falls, and Paul E. Hoff-
man, Glasgow, Edward C. Alexander (argued orally), Great
Falls, Paul E. Hoffman (argued orally), Glasgow, for respond-
ents.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a judgment of the District Court of
the Seventeenth Judicial District in favor of the defendants.
The appellant will be referred to as the plaintiff and the re-
spondents as the defendant.

The plaintiff, Elsie Grant, brought an action on a complaint
in three causes of action. The first was a quiet title action, the
second an action to have a deed declared a mortgage, and the

third to have a contract for deed cancelled as a cloud on title. The third cause of action was abandoned just prior to the trial. The first cause of action has since been abandoned. Various motions and objections were made at and during the course of the trial that have no bearing on this appeal so they will not be set out.

So far as it is important to this opinion, the defendants are in effect just one, Jacob Pattison, and will be referred to as defendant. The general factual background shows that plaintiff owned a 960 acre farm, partly cultivated and partly range land. Prior to January 31, 1949, at various times, plaintiff purchased from defendant farm machinery and had previous advances of credit. Based upon these advances of credit, plaintiff gave defendant a mortgage on the lands in controversy dated January 31, 1949, recorded February 2, 1949. This mortgage secured the repayment of $8,100 in three annual installments of $2,700 on principal plus eight percent interest with installments due on September 1, 1949, 1950, and 1951. No payments were made. Two and one-half years later, plaintiff and defendant discussed a settlement of their business in the office of Thomas Dignan, who was defendant's attorney. There apparently were some differences between the parties as to the amount of the indebtedness; but, in all events shortly prior to May 25, 1951, a figure of $10,600 was arrived at, and Mr. Dignan was instructed to prepare a deed and bill of sale to defendant in full satisfaction of the existing indebtedness. At the same time the attorney was instructed to prepare a contract for deed from defendant to plaintiff covering the land and machinery whereby plaintiff was to buy back the property for $10,600 payable $1,500 on November 1, 1951; $2,500 on November 1, 1952, 1953, and 1954, and $1,600 on November 1, 1955, with interest on the unmatured balance at eight percent.

On May 25, 1951, the quitclaim deed to the defendant was executed and delivered, and thereafter recorded on June 11, 1951. The bill of sale also was executed and delivered. It is

clear, too, from the testimony and as found by the District Court, that the contract for deed, mentioned above, to repurchase the property was executed and delivered.

We say it is clear that this contract for deed was executed and delivered. We should mention though that plaintiff disputed this at the trial, but in a deposition taken on August 14, 1959, admitted it. Plaintiff at the trial insisted that the contract was one for a price of $15,000 in six installments with interest at ten percent. No contract such as this was produced, the trial court disbelieved it; and our reading of the very unsatisfactory evidence concerning it causes us to agree with the trial court.

At this time, there was a cancellation of the existing indebtedness, the pre-existing mortgage for $8,100 was satisfied of record on August 7, 1961, and the transaction was confirmed by a letter of plaintiff to defendant on August 7, 1951.

Plaintiff never made any payments as called for in the contract for deed. On January 29, 1952, defendant caused a notice of cancellation of contract to be served upon plaintiff by registered mail. That notice, in accordance with the terms of the contract, gave plaintiff notice that she was in default and gave sixty days, until April 2, 1952, to pay the purchase price. The return receipt for the registered notice was signed by plaintiff on February 1, 1952. No payments were made and defendant took possession of the land. Since 1952 he has paid all the taxes, leased it, sold parts of it and in every way exercised complete dominion. This, without question by plaintiff, although plaintiff and defendant continued to have business dealings on a monthly basis.

In 1958 and 1959, a speculative land boom was generated by the Glasgow Air Base. At that time, plaintiff then became interested and filed her complaint on May 5, 1959, asserting as previously set out that the deed was in fact a mortgage.

The trial court made extensive findings of fact. Briefly stated these findings were:

1. That on May 25, 1951, Elsie Grant was indebted to Jacob Pattison in the sum of $10,600; on that day Elsie Grant agreed to execute the quitclaim deed and bill of sale in full satisfaction of her indebtedness; that it was understood that Jacob Pattison by the deed became the absolute owner of the land subject to the written contract to repurchase.

2. That on May 25, 1951, the sum of $10,600 was not disproportionate to the value of the property transferred.

3. That the quitclaim deed and bill of sale were executed, pursuant to the agreement, on May 25, 1951, and that contemporaneously there was executed the contract for deed and with specific provision for cancellation upon default.

4. Upon execution of the deed the pre-existing indebtedness was cancelled and satisfied, the notes were redelivered to Elsie Grant; later, on August 7, 1951, the previous mortgage was satisfied of record and Elsie Grant confirmed the settlement in writing.

5. Elsie Grant made no payment on the Contract for Deed, it was properly cancelled according to its terms and Jacob Pattison went into possession on or about April 19, 1952; thereafter Pattison and those claiming under him, were in exclusive possession, had all benefits of the land and paid all taxes delinquent and current.

6. After May 25, 1951, Elsie Grant never claimed the quitclaim deed to be a mortgage; she did farm the land in 1951 under her contract for deed but voluntarily gave up possession after the cancellation and made no claim whatsoever after Jacob Pattison went into possession about April 19, 1952, until the part of the lands adjacent to the Glasgow Air Force Base suddenly boomed in value in the Spring of 1959.

7. That on or about December 26, 1958, the three sons of Jacob Pattison became the owners of an undivided three-fourths of the tract adjacent to the Air Base for a valuable consideration and without any notice of Elsie Grant's present claims.

The specifications of error challenge certain of the findings

of fact from the record, but as we have already indicated, there is substantial credible evidence to sustain the District Court. In fact the evidence overwhelmingly supports the trial court's findings.

But one contention of the appellant's specifications of error need be considered here. Appellant urges that the deed in question was, in fact, a mortgage. She urges the doctrine that ''once a mortgage always a mortgage'' applies.

However, this court has ruled on this matter contrary to appellant's contentions. In Donohoe v. Landoe, 126 Mont. 351, 355, 251 P.2d 560, 562, the situation is quite similar to the one here. This court set forth the rules as follows:

''* * * In approaching a consideration of the questions before us we keep in mind that the burden of proof is on him who alleges that a deed absolute on its face is a mortgage to establish the fact by clear and convincing evidence. Lewis v. Bowman, 113 Mont. 68, 121 P.2d 162; Elling v. Fine, 53 Mont. 481, 164 P. 891, Ann.Cas.1918C, 752. This is the rule also in other jurisdictions. 59 C.J.S. Mortgages, § 53, p. 93.

''As to the burden of proof, Murray v. Butte-Monitor T.M. Co., 41 Mont. 449, 110 P. 497, 112 P. 1132, held that the usual rule that the person asserting a deed to be a mortgage has the burden of proof is not applicable to a situation where there is a contemporaneous agreement to reconvey. Here we have such an agreement to reconvey, but this case differs from the Murray case in that here there was a mortgage on the very property in question in existence when the deed was made. If the deed was not what it purports to be, then it is difficult to conceive of any purpose in making the deed and contract to reconvey.''

In the instant case, there was a deed and a contract to reconvey.

In Donohoe v. Landoe, supra, this court then went on to say in 126 Mont. at pp. 358, 359, 251 P.2d at p. 563:

''If there is no debt left to be secured as here, then obviously

there would be no occasion for any security. Morrison v. Jones, 31 Mont. 154, 77 P. 507. There being no existing indebtedness, the instruments must be taken as they purport to be on their face, viz., a conveyance amounting to a sale with the option in plaintiffs to repurchase. [Citing authorities.]

''The rule is stated in 1 Jones on Mortgages, § 316, pp. 386, 387, as follows: 'The existence of the debt is the test. If an absolute conveyance be made and accepted in payment of an existing debt, and not merely as security for it, an agreement by the grantee to reconvey the land to the grantor upon receiving a certain sum within a specified time does not create a mortgage, but a conditional sale, and the grantee holds the premises subject only to the right of the grantor to demand a reconveyance according to the terms of the agreement.'

''And in 1 Jones on Mortgages, § 318, pp. 396, 398, it is stated: 'Where an absolute deed is executed in consideration of a precedent debt, accompanied by an agreement to reconvey to the grantor upon payment of the consideration, a decisive test whether the transaction constitutes a mortgage or a conditional sale is found in the question whether the debt was discharged by the deed or subsisted afterward. An absolute deed delivered in payment of a debt is not converted into a mortgage merely because the grantee therein gives a contemporaneous stipulation binding him to reconvey, on being reimbursed, within an agreed period, an amount equal to the debt and the interest thereon. If the conveyance extinguishes the debt and the parties so intend, so that a plea of payment would bar an action thereon, the transaction will be held an absolute or conditional sale, and not a mortgage.

'' '* * * The test, therefore, in cases of this sort, by which to determine whether the conveyance is a sale or a mortgage, is to be found in the question whether the debt was discharged or not by the conveyance. If in the subsequent transactions of the parties there is no recognition in any way of the relation of debtor and creditor, and the vendee for a considerable period

holds possession without paying interest or rent, these facts go to show that there is only an agreement for repurchase and not a mortgage.' ''

These rules apply here. There was no debt left to be secured. The evidence of indebtedness was given to the plaintiff. The mortgage was satisfied of record. The plaintiff confirmed it all by letter. We cannot conceive of any more clear-cut evidence than was presented.

Additional factors such as the finding that the consideration for the deed was not disproportionate to the value of the property transferred also appear. Because of our holding as to the deed not being a mortgage, it is not necessary to consider the further matters claimed as error. Whether or not the other defendants were innocent purchasers for value, whether the plaintiff was estopped by laches, whether the complaint and proof were insufficient for want of an offer to pay the alleged debt, and whether the action was barred by the statute of limitations need not be considered since they, and each of them, would only be additional reasons for affirming the judgment of the District Court.

For the foregoing reasons, the judgment is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES ADAIR, DOYLE, and JOHN C. HARRISON concur.