**EMERY, Rec., v. VILLINES.**

No. 25511.   June 18, 1935.

Rehearing Denied December 24, 1935.

Application for Leave to File Second Petition for Rehearing Denied January 21, 1936.

Clarence Robison and Geo. E. McKinnis, Jr., for plaintiff in error.

Goode, Dierker & Goode, for defendants in error.

GIBSON, J. This action was originally commenced in the superior court of Pottawatomie county by John W. Villines and his wife, Minnie C. Villines, against the Tecumseh National Bank. John W. Villines has since died and the bank has become insolvent and a receiver appointed. This cause has been revived in the name of the above administratrix, and the appeal is prosecuted by the bank's receiver.

Hereinafter the plaintiff in error will be referred to as defendant, and the defendants in error as plaintiffs, as they appeared at the trial.

Plaintiffs allege, in substance, that in the year 1923, John W. Villines was indebted to the defendant in the sum of approximately $2,400; that the plaintiffs, to secure said indebtedness, executed to the defendant a mortgage covering 160 acres of land in Pottawatomie county; that thereafter, on the 29th day of August, 1924, the said Villines being further indebted to the defendant, plaintiffs executed and delivered to defendant their warranty deed covering said land to secure said indebtedness; that thereafter, on the 26th day of February, 1926, said defendant bank renewed the obligation of the plaintiffs, including the indebtedness secured by the deed of August 29, 1924, and as security for such indebtedness they executed to defendant their quitclaim deed covering said land.

It is alleged, further, that plaintiffs remained in possession of the land until February 26, 1926, the date of the execution of the quitclaim deed; that at the time said deed was executed the defendant orally agreed to reconvey said land when plaintiffs' indebtedness to the defendant was satisfied, and that said agreement was a part of the consideration for the execution of said deed as security.

It is further alleged that the defendant sold oil and gas leases on said land and numerous royalty interests therein at prices aggregating far in excess of the amount of indebtedness owed by plaintiffs to defendant.

Plaintiffs sought a decree requiring defendant to reconvey to them so much of the land as remained in its name and an accounting for the revenues received from sales and rents.

Upon the filing of the petition in error and case-made in this court, the plaintiffs filed their motion to dismiss this appeal, assigning as ground therefor the premature settlement and signing of the case-made, which motion was by the court denied. Plaintiffs now reargue their motion to dismiss upon the same ground as above mentioned. Ordinarily, where such motions have been considered and denied, we are not required to give to them further consideration. Kay County Gas Co. v. Bryant, 135 Okla. 135, 276 P. 218.

It is strongly asserted by plaintiffs, however, that the case-made so settled and signed prior to the time allowed by the trial court is a nullity in the absence of a waiver on the part of plaintiffs, and can present nothing for review in this court, except, possibly, such questions as may be considered on appeal by way of transcript. It is argued that, since the record was sufficient as a transcript, this court was correct in its ruling on the former motion to dismiss, and that the effect of such ruling was to sustain the case-made as a transcript only, and, therefore, upon final determination of this appeal the merits of the case cannot be considered.

That the case-made is a nullity, plaintiffs rely principally upon the rule expressed in Bradfield v. Black, 143 Okla. 185, 287 P. 1026, as follows:

"In the absence of a waiver by the defendant in error, a case-made settled and signed * * * before the expiration of the time allowed for suggesting amendments is a

nullity and brings nothing before this court for review. * * *"

Under former holdings of this court a case-made prematurely settled and signed was a mere nullity. Under other decisions, some more recent than the one above, it has been held that a case so settled and signed is not void, but merely irregular. Southwestern Surety Insurance Company v. Dietrich, 68 Okla. 114, 172 P. 51; Ranney-Davis Mercantile Co. v. Morris et al., 88 Okla. 107, 211 P. 1044; American Surety Co. v. Wolsey, 163 Okla. 270, 20 P. (2d) 158. And, as stated in these cases, the question, involved is whether or not a defendant in error has, by his acts, waived his right to object to the premature settlement of the case-made.

In the present case the plaintiffs, in response to notice, made timely appearance and filed their written objection to settlement and signing of the case-made. The ground assigned was the premature settlement and signing.

A review of more recent decisions of this court reveals a growing tendency toward a relaxation of the rule of procedure here considered. In the absence of a showing that substantial rights have been prejudiced, it is said that a defendant in error has waived the time for suggesting amendments and has waived his right to object to premature settlement. This principle is strongly set forth in the holding of this court in the case of American Surety Company v. Wolsey, supra, wherein the rule as expressed in Southwestern Surety Insurance Company v. Dietrich, supra, is quoted with approval, as follows:

"Where due notice is given of the time and place that a case-made will be presented to the trial judge for settlement and signature, the party upon whom such notice is served cannot ignore the same, or treat it as a nullity, although the time fixed therein for presenting such case to the judge for settlement and signing may be at a time earlier than it could properly be settled and signed and when the trial judge, in the absence of the party upon whom such notice has been served, and without objection from him, or from any other person, settles and signs such case-made when presented to him, and nothing further is done in reference thereto, the Supreme Court will, in the absence of other irregularities, treat the case as valid and will not permit same to be questioned in the absence of a showing that application was made to the trial judge to allow the time to which such party was entitled by the order and that by reason of the failure of the court or judge to grant

such time the party was prevented from suggesting amendments which he would have suggested and was entitled to have considered in the settlement of such case."

The plaintiffs in the present case did appear, and object to settlement of the case before the time allowed, but there is no showing that the trial court's refusal to sustain their objection has in any manner prejudiced their substantial rights. There is no showing that they were prevented from suggesting amendments which they would have suggested and were entitled to have considered in the settlement of the case, and, as was stated by this court in American Surety Company v. Wolsey, supra: "It seems to us that the rule announced in American Surety Co. v. Wolsey, principle and should be followed in the future decisions of this court."

We are of the opinion that the rule announced in American Surety Co. v. Wolsey, supra, is more fundamentally sound than the rule announced in Bradfield v. Black, supra, and the other cases relied upon by defendants in error and in so far as the principles announced in Bradfield v. Black, supra, and other cases which are in conflict with the principles announced in American Surety Co. v. Wolsey and with this opinion, they are expressly overruled on that question.

Of course, when notice is served of the settlement of a case-made and a party appears and objects before the trial court to the premature settlement and signing thereof, the trial court should permit proper time according to the previous order of the court for the suggestion of amendments. But his failure to do so is an irregularity which will not make the case-made void for the reason that under the liberal provisions for the correction of a case-made as contained in section 535, O. S. 1931, this court, upon application of a party showing prejudice, can permit the withdrawal of the case-made and the proper correction thereof. It is contended by defendants in error that the rule adhered to in this case deprives them of the right to suggest amendments which otherwise they would have made had the case-made not been prematurely settled. But they made no application in this court for the correction of the case-made under the provisions of section 535, supra.

In an early opinion of this court soon after the effective date of that legislative enactment, this court has under consideration England Bros. v. Young, 25 Okla. 876, 105 P. 654, in which we construed the provisions thereof and pointed out that no case

should be dismissed until either party had been allowed an opportunity to amend the case-made.

In spite of the fact that in some cases subsequent to this opinion the provisions thereof were lost sight of, the better rule has always given the right of amendment to either party at any time after filing the case-made in this court. This court makes the correction. It is not a question of jurisdiction or the lack of jurisdiction of the trial court. It is true this court often directs the correction under the supervision of the trial judge, but he acts in such capacity as a special master of this court and this court's action thereon is final. Greer v. West, 173 Okla. 427, 48 P. (2d) 1043. See, also, as to the right of liberal amendment of case-made before or after the six months' period of appeal has expired: In re Comb's Es'ate, 62 Okla. 33, 161 P. 801; Collier v. Gannon, 40 Ok'a. 275, 137 P. 1179; Divine v. Harmon, 23 Okla. 901, 101 P. 1125; Argentoes v. Fidelity Bldg. & Loan Ass'n, 127 Okla. 183, 260 P. 55; Seibold v. City of Muskogee, 155 Okla. 81, 8 P. (2d) 35.

It therefore results that if an application is made to this court to correct a case-made under the provisions of section 535, supra, either party has the right to have such correction at any time before the final opinion. The defendan's in error, had they availed themse,ves of the provisions of section 535, supra, could not complain that they suffered a prejudice by the failure of the court to sustain their objections to the settlement of the case-made.

We hold, therefore, that where a case-made is settled and signed before the expiration of the time allowed by law or by former order of court, and upon due notice to the defendant in error, after proper service of such case-made, the defendant in error waives the time remaining for suggesting amendments where no showing is made that he was prevented from suggesting amendments which he would have suggested and was entitled to have considered in the settlement of the case, and a case so settled and signed, in the absence of other irregularities, complies with all jurisdictional requirements and, on appeal, properly presents the record for a full determination upon the merits.

The defendant's assignment of error is that the judgment of the trial court is not sustained by sufficient evidence, and is against the weight of the evidence.

The trial court made findings of fact wherein it is found in substance that John W. Villines and Minnie C. Villines had numerous business transactions with the defendant bank extending over a period of a number of years; that on February 26, 1926, the date of the execution of the quitclaim deed, Villines was the owner of the lands in question subject to a mortgage for $7,500 held by the Federal Land Bank, and subject to a second mortgage to defendant to secure an indebtedness of $2,431.42, and subject to a warranty deed and contract executed by Villines to defendant to secure certain payments made by defendant for Villines on the Federal Land Bank mortgage.

It was further found that at the time of the execution of the quitclaim deed the plaintiffs owed defendant the sum of $2,588.47 and that this indebtedness was taken up, or paid by a note of $1,000 and the quitclaim deed to the land for $1,585.47; that the relationship of debtor and creditor existed when the quitclaim deed was executed, and that all parties knew that the plaintiffs were hopelessly insolvent unless the oil and gas rights in the land were utilized and made to bring their salable value, and that this conveyance was for the purpose of affording defendant an opportunity to collect the debt and procure something for plaintiffs out of the land.

It was found that all former mortgages were merged in the transaction of February 26, 1926, and that defendant kept no account with Villines or his property after said date.

And further, that the $1,000 note was paid off by collections made by the defendant for Villines and from money received from the sale of royalty interests in the land.

It was found that the difference between the amount received by defendant from sales and rentals and the amount owed by plaintiffs to defendant was $4,712.25.

Upon this state of facts the trial court rendered judgment for plaintiffs decreeing the deed executed February 26, 1926, to be a mortgage, and that plaintiffs were entitled to redeem, and entitled to recover such title in the land as remained in defendant and, in addition thereto, the sum of $4,712.25.

The evidence is undisputed that on the 26th day of February, 1926, and for a number of years prior thereto, the plaintiffs and defendant occupied the relationship of

mortgagor and mortgagee, and that the quitclaim deed of that date covered mortgaged property.

Defendant argues that the general rule governing the construction of deeds of conveyance is applicable in this case, that the burden of proof was upon plaintiffs to establish the fact that the deed was a mortgage by clear and unequivocal testimony. Hunter v. Murphy, 124 Okla. 207, 255 P. 561; Owens v. State, 133 Okla. 183, 271 P. 938; Morrison v. Krouch, 141 Okla. 288, 285 P. 10. In the latter case, the rule as established in this state is expressed as follows:

"Where an instrument on its face is an absolute and unqualified conveyance of realty or of an interest therein, before a party can have it declared a mortgage, the burden is upon him to establish such fact by cogent, clear, convincing and satisfactory proof."

According to the judgment of the trial court, the plaintiffs have sustained this burden, and the defendant says the judgment is clearly against the weight of the evidence.

In a case of this character, the real intention of the parties governs the final determination of the issues, and such intention is gathered from the face of the written agreements, or may be disclosed by extrinsic evidence. Wolsey v. Carter, 30 Okla. 642, 121 P. 669. In such case it is the duty of this court to weigh the evidence and determine which party is favored with the clear weight thereof and decide this appeal in accordance therewith. Renas v. Green, 88 Okla. 169, 212 P. 755.

While the presumption exists that the deed is what it purports on its face to be, this presumption may be overcome by proper evidence, and when competent and substantial evidence has been introduced showing the deed to be a mortgage, then the presumption arising from the face of the instrument is rebutted. 41 C. J. 345; Koenig v. Dieterle, 140 Okla. 77, 282 P. 619. In the present case it is admitted that the plaintiffs were hopelessly in debt at the time of the execution of the deed. This circumstance may be considered as tending to show intention to execute a mortgage. Koenig v. Dieterle, supra. The relationship of debtor and creditor continued between the parties subsequent to the execution of the deed. This, too, is a circumstance to consider as tending to show a mortgage instead of a deed. Voris v. Robbins, 52 Okla. 671, 153 P. 120; Hall v. Russell, 72 Okla.

47, 178 P. 679; Hamilton v. Harrington, 112 Okla. 79, 239 P. 618. Taylor v. Campbell, 139 Okla. 110, 281 P. 243. While these facts constitute attendant circumstances tending to defeat the deed and establish a mortgage, they are not sufficient to overcome the presumption favoring a deed, in the absence of undue or overreaching advantage practiced upon the grantor by the grantee. While such deals between a mortgagor and mortgagee may be closely scrutinized by the courts to determine their fairness (Koenig v. Dieterle, supra), no rule of law exists in this state denying to the mortgagee the right to purchase the mortgaged premises from the mortgagor.

In the present case the plaintiffs were heavily indebted to the defendant and had been for a number of years prior to the execution of the deed. The premises in question were mortgaged to the defendant for a portion of plaintiffs' indebtedness. At the time of the execution of the deed plaintiffs were indebted to defendant in the sum of approximately $3,200, evidenced by promissory notes, in addition to other sums paid out by defendant on behalf of plaintiffs. As a part of the deed transaction, the defendant delivered to plaintiffs all notes held by it against plaintiffs. For the relinquishment of said notes the defendant accepted the deed in question. At the same time, plaintiffs executed and delivered to the defendant their note for $1,000 shown by the evidence to be secured by collateral notes belonging to plaintiffs, and another note for $625 was executed by plaintiffs to defendant. This latter note was secured by a chattel mortgage.

Plaintiffs say that in this transaction they understood that their indebtedness was being renewed. Since defendant delivered to plaintiffs all their promissory notes, thereby voluntarily relinquishing all evidence of prior indebtedness of plaintiffs, we hardly see how it could have been understood that this indebtedness was being renewed. The defendant having relinquished all debt evidenced by the notes, it follows that the quitclaim deed, if given as a mortgage, could have been for the purpose of securing no other indebtedness than the two notes for $1,000 and $625, respectively, above mentioned.

The evidence is clear that the $1,000 note was secured by collateral notes belonging to plaintiffs. It is admitted that a chattel mortgage, executed at the time the deed was executed, secured the $625 note. The $625 note and chattel mortgage was a renewal

of a prior note and mortgage. It is not shown that the $1,000 note was, or was not, given for a certain specified debt.

To sum up the contention of the plaintiffs, it amounts in substance to this, that they have executed to the defendant a deed intended as a mortgage to secure the payment of one note for $1,000, further secured by collateral notes, and to secure one note for $625, further secured by a chattel mortgage. It is shown by the evidence that on February 26, 1926, the date the deed was executed, the plaintiffs were indebted to the defendant, in addition to the notes relinquished and the $625 note above mentioned, in the sum of approximately $1,600, representing taxes paid on behalf of plaintiffs and interest due on indebtedness. ' Therefore, the result of the transaction was that the defendant relinquished approximately $4,800, and parted with all evidence of such indebtedness represented by the notes, and accepted in 'its stead notes aggregating $1,625 secured, as plaintiffs say, by collateral notes, a chattel mortgage, and a quitclaim deed. We cannot believe, in the absence of proof, that the defendant deliberately forgave plaintiffs their debts in the sum of approximately $3,200, the loss suffered by defendant in the transaction when the deed was executed.

Plaintiffs say that the gross inadequacy of the consideration given for the deed is an element indicating that the deed was a mortgage. Inadequate consideration is an element to be considered in such cases. Wagg v. Herbert, 19 Okla. 525, 92 P. 250. As to the value of the land, the evidence is clear that it was worth no more than $50 per acre, or $8,000, on February 26, 1926. There was a mortgage to the Federal Land Bank for $7,423.87 outstanding. Apparently plaintiffs' equity in the land was no more than $576.13. Defendant canceled approximately $3,200 of plaintiffs' indebtedness as a consideration for this equity. Certainly, that was ample consideration. The land did later increase in value to a small extent and certain interests therein sold by the defendant for more than $50 per acre, but, in the absence of fraud or concealment of facts on the part of the defendant, we must hold this fact immaterial.

Plaintiffs say that the deed was a mortgage for the further reason that the $1,000 note was paid by the defendant out of money received by 'it from sales of royalty in the land. A portion of the note was paid

as alleged. But, in the face of the fact that the defendant discharged a large portion of its indebtedness against the plaintiffs for no apparent cause except as consideration for the deed, and, since that consideration was more than adequate, we see no cause to penalize the defendant if, after a fair and open transaction, it chose to so close an account of long standing.

We have thoroughly examined the evidence in the present case, and we find that the judgment of the trial court is not reasonably supported thereby and is against the clear weight thereof.

Therefore, the judgment of the trial court is reversed.

McNEILL, C. J., and RILEY, BUSBY, and CORN, JJ., concur.