**MODERN WOODMEN OF AMERICA,
CAMP. NO. 6967 et al.**

v.

**TULSA MODERN WOODMEN BLDG.
ASS'N et al.**

No. 35031.

Supreme Court of Oklahoma.

Sept. 22, 1953.

Rehearing Denied Jan. 12, 1954.

Raymon B. Thomas, Charles C. Liebler, and Harley W. Van Cleave, Tulsa, for plaintiffs in error.

Charles R. Fellows and Ray S. Fellows, Tulsa, for defendants in error.

WILLIAMS, Justice.

Parties are referred to herein as in the trial court.

On April 6, 1950, plaintiffs, the Modern Woodmen of America, Camp Number 6967, an Association, and Carl J. Ecker and Jess Admire, members thereof, allegedly authorized by the Association to bring suit in behalf of themselves, the association, and other members similarly situated, filed their petition in the case at bar against Tulsa Modern Woodmen Building Association, a Corporation, alleging, among other things, a state of facts substantially as follows: that defendant corporation was formed in 1932 for the purpose of holding in trust certain real property for the use and benefit of plaintiff association; that the only members of the defendant corporation were the trustees thereof; that by the terms of its articles of incorporation, defendant corporation was required to account to plaintiff association at least once each year; that defendant corporation, and the individual defendants as its trustees and directors, had refused to account to plaintiff for the funds and monies received by said corporation from its management and operation of the real property above referred to. The petition asked for the appointment of a receiver to hold said property in trust for plaintiff association, that the court order an audit of the books and records of defendant corporation, and for all other proper relief.

Defendants' answer included the affirmative defense of laches, and was unverified.

The testimony of plaintiffs' witnesses may be fairly summarized as follows:

Prior to 1932, plaintiff association had been renting quarters from another fraternal organization. During the last week of December, 1932, a representative of an Oklahoma City trust company approached Mr. Carl Poss (one of the individual defendants herein, president of defendant corporation and a member, as are all other individual defendants, of plaintiff association) with regard to a possible sale of Lots 5 and 6 in Block 1, Gillette Hall Addition to the City of Tulsa, and the subsequent use of a building on one of the lots by the plaintiff association for lodge purposes. Though this point is in dispute, it may fairly be inferred that Mr. Poss was approached in his capacity as a member of plaintiff association, since defendant corporation was not in existence at that time. Title to the described property was held in the names of a Mr. Gill and his wife, but the trust company held a mortgage on it and an assignment of rents. Mr. Poss consulted other members of the plaintiff association, including the clerk thereof, and it developed that plaintiff association, under its charter and by-laws, was unable to hold title to real estate. There was also disputed evidence to the effect that Mr. Poss and his group were acting as a committee which had been appointed by plaintiff association to look into the possibility of acquiring a building for lodge purposes.

On December 31, 1932, articles of incorporation of defendant corporation were filed pursuant to 18 O.S.1951 § 542 et seq. with the Secretary of State. On the same day Mr. Gill and his wife executed a deed in Oklahoma County transferring title to the

real estate to defendant corporation, and the deed was filed for record in Tulsa County.

This deed was unusual in many respects. The recited consideration was "one dollar and other valuable considerations", and no internal revenue stamps were attached. Beyond the nominal recited consideration, defendant corporation was not obliged to pay anything, and it was specifically exempted from liability in case of a deficiency judgment upon possible foreclosure of the mortgage. The land was of course conveyed subject to the outstanding mortgage and assignment of rents in favor of the trust company. Grantee's use of the property was restricted to benevolent and charitable purposes, and it was provided that grantee could not alienate or encumber the property in any way without the prior written consent of the mortgagee (trust company). There was a provision for reversion of title to Gill and his wife in the event of the violation of any of the many conditions and restrictions contained in the deed.

Shortly after taking title to the property, defendant corporation applied to the County Excise Board to have the building taken off the tax rolls. At the hearing in connection therewith, Mr. Poss testified under oath that the corporation had been formed "in connection with the Modern Woodmen". Although the trial court refused to permit the introduction in evidence of the entire transcript of testimony before the Excise Board, it is apparent from that part in the record that the request for tax exemption was granted as to part of the property because it was considered to be lodge property. It is highly doubtful that the tax exemption could have been obtained otherwise, since defendant corporation's by-laws and articles of incorporation, taken together, contain provisions that the purpose of the corporation is to provide benevolent and charitable services *in behalf of its members,* and that membership shall be restricted to the members of the Board of Trustees. See County Assessor, Oklahoma County, v. United Brotherhood of Carpenters & Joiners, 202 Okl. 162, 211 P.2d 790, wherein this court held that an association conducted only for the mutual benefit of its own members was not a benevolent association entitled to exemption from taxation.

In 1941, a new contract was made between the parties, by the terms of which defendant Corporation deeded Lot 5 back to Gill, and Gill agreed to accept $5,000 in cash and $10,000 in semiannual payments of $500 each in full satisfaction of the debt as to Lot 6, on which the lodge building was situated. At this time, all conditions and restrictions were removed. The $5,000 was advanced by plaintiff association, and although defendant corporation now contends that this was a loan and seeks to pay it back, the weight of the evidence adduced by plaintiff is to the effect that it was really a payment on property purchased for plaintiff association. At the time this transaction was approved at a call meeting of plaintiff association, defendant corporation's by-laws provided that all income from the building should be paid into a "sick fund" of plaintiff association; shortly thereafter the by-laws were changed and this provision was left out, in order that payments on the building debt might be made by defendant corporation, which earned money by renting part of the building and promoting weekly dances for the general public.

It is to be noted that after this amendment in its by-laws (which could have been enacted at any time) defendant corporation, by the terms of its by-laws and articles of incorporation, was not bound in any way to plaintiff association, and owed it no obligation whatsoever. If the contentions of defendant corporation herein are upheld, it could logically and legally break away entirely from plaintiff association and adopt any other charitable purpose it might choose as the object of its beneficence.

Since 1941, all of the rest of the purchase price has been paid, and the building is now free of encumbrance. Since the payment of the debt, defendant corporation has refused to transfer funds representing income from the building to plaintiff association, apparently desiring to set up certain conditions and restrictions as to how such funds shall be used after the transfer.

At the conclusion of plaintiffs' evidence, defendants' demurrer to the evidence was sustained and the cause dismissed, and

plaintiffs have duly appealed. One of the allegations of error is error in sustaining the demurrer. Since we deem this proposition to be controlling, we will not consider herein the other arguments advanced.

The grounds of the demurrer to the evidence were that "same is insufficient to prove any of the causes of action mentioned in the petition and the amended petition and reply, and for the further reason that same is insufficient to disclose a proper party plaintiff or to disclose any trust in and to the property involved in this law suit".

 We take note of the following rules:

"In a case of equitable cognizance, where a demurrer to the evidence of plaintiff is offered, the court should treat it as a motion for judgment in favor of defendant upon the testimony offered by the plaintiff, and should weigh the testimony introduced by the plaintiff, and, after so doing, may enter its judgment thereon." Beverly Hills National Bank & Trust Co. v. Martin, 185 Okl. 254, 91 P.2d 94.

"In an equity case it is the duty of this court to weigh the evidence, and if the judgment of the trial court is against the clear weight thereof, the judgment will be reversed." Embry v. Villines, 175 Okl. 552, 53 P.2d 277, 278.

 A careful examination of the evidence of plaintiff in this case convinces us that the weight thereof is decidedly in favor of plaintiff, and that plaintiffs did prove, prima facie, a cause of action against defendants. We cannot believe, from the evidence, that plaintiff association herein would have participated in the creation of a benevolent and charitable corporation which could have divorced itself entirely from plaintiff association at any time, even after the investment by plaintiff association of $5,000 in property held by the corporation. Also, the facts that plaintiff association had considered the acquisition of a building for some time before the purchase here concerned, and that actual negotiations began before defendant corporation even came into being; both indicate that a trust relationship was contemplated.

 The other ground of the demurrer (that the evidence "does not disclose a proper party plaintiff") is also without merit. In their brief, defendants contend that the plaintiff association does not have the capacity to sue, and that the individual plaintiffs were not authorized to sue on behalf of the association. As to the second contention, we have heretofore noted that defendants' answer was not verified; also, no demurrer to the petition was filed. Under the terms of 12 O.S.1951 § 286, defendants therefore have waived whatever such objection they might have had and the allegations as to authority of individual plaintiffs to sue in behalf of the association and other members thereof similarly situated is "taken as true." Such being the case, defendants' first contention above (that plaintiff association had no legal capacity to sue) is immaterial, since it makes no practical difference whether the judgment is rendered as to the plaintiff association itself, or as to individual plaintiffs suing in behalf of the association and other members thereof.

 In their brief, plaintiffs urge this court to follow the rule announced in In re Ho-Tah-Moie's Estate, 200 Okl. 532, 198 P.2d 638, 639 and "render, or cause to be rendered, such judgment and decree as the trial court should have rendered", and to make a final determination of this case. An examination of many of the cases wherein such rule is cited reveals that it is rarely followed in cases which reach this court on appeal from a judgment rendered pursuant to an order sustaining defendant's demurrer to the evidence, or other circumstances under which defendant has had no opportunity to present his case-in-chief. Under the facts in the case at hand, we do not believe it would serve justice to follow such rule here.

 The suggestion might be made that plaintiff association cannot qualify as a cestui que trust, since it is neither a person nor a legal entity, 65 C.J., Trusts, sec. 24 (3) and that it should not be allowed to hold the beneficial interest in that to which it cannot hold legal title. While this is the general rule, the following exception prevails in Oklahoma:

"To avoid the inconveniences resulting from the incapacity of a voluntary

association to take and hold property as an organization, conveyances may be made to trustees for the use and benefit of the association or its members. * * *" 7 C.J.S., Associations, § 14.

See Richardson v. Harsha, 22 Okl. 405, 98 P. 897, 905, wherein this court said with regard to an "unincorporated voluntary association":

"As such an association, while it may not hold real property in its name, it has the power to appoint trustees in whom title to such real property as it may own may be vested."

See also 4 Am.Jur., Associations and Clubs, sec. 36, which reads in part:

" * * * Also, it is clear that an unincorporated association may take as cestui que trust. * * *"

The judgment of the trial court is therefore reversed with directions to grant plaintiff a new trial.

HALLEY, C. J., JOHNSON, V. C. J., and WELCH and BLACKBIRD, JJ., concur.

CORN, DAVISON, ARNOLD and O'NEAL, JJ., dissent.