**Pearl FORSHEE, Plaintiff in Error,**

v.

**Katherine ANDERSON, Defendant in Error.**

**No. 38107.**

Supreme Court of Oklahoma.

Nov. 25, 1958.

Green & Feldman, W. E. Green, Raymond G. Feldman, Wm. S. Hall, George A. Farrar, Tulsa, for plaintiff in error.

G. C. Spillers, G. C. Spillers, Jr., Tulsa, for defendant in error.

PER CURIAM.

Inasmuch as the parties to this appeal appear here in the same order as in the trial court, we shall refer to them by their trial court designation.

Plaintiff brought this action to establish a constructive trust in property to which record title had been conveyed to her sister, and to her sister and brother jointly, by her mother. The sister and brother subsequently partitioned their jointly acquired property by an exchange of deeds. The sister, defendant in this case, is now the record owner of 160 acres which she is about to convey to a third person and in which plaintiff is asserting this claim. The trial court has sustained defendant's demurrer to plaintiff's evidence and rendered judgment for defendant, from which plaintiff has perfected this appeal. As this demurrer to the evidence was properly treated as a motion for judgment upon which the court weighed plaintiff's evidence, we are

to determine whether the trial court's judgment is contrary to the clear weight of plaintiff's evidence. Modern Woodmen of America, Camp No. 6967 v. Tulsa Modern Woodmen Bldg. Ass'n, Okl., 264 P.2d 993. Both parties agree upon the applicable law as it is stated in Colbourn v. Bell, Okl., 294 P.2d 289, as follows:

"A constructive trust may be established by parol evidence, but the law, for the safety of titles, requires that the proof should be of the most satisfactory and trustworthy kind. The onus of establishing a constructive trust lies upon him who seeks its enforcement, and before a court of equity would be warranted in making a decree therefor, the evidence must be clear, unequivocal and decisive."

Thus we come to a consideration of the evidence.

It appears that in 1935, in contemplation of her prospective remarriage, the mother of these parties executed five deeds to convey her real estate to her children in varying proportions. The deed to one of her sons was delivered at that time. He has since died. The other deeds, under which the defendant claims, were not delivered but were placed in the mother's safety deposit box in a bank at Broken Arrow. These four deeds remained in that depository until 1940. In that year an employee was injured on the mother's farm, and she thereupon decided to deliver the deeds. Accompanied by her three living children, she went to the bank and removed the deeds; whereupon she and these two daughters went to the county court house in Tulsa to verify the property descriptions. Having done this, they went to the office of her attorney to consult with him concerning the effectiveness of the method of avoiding a possible judgment lien on the property by the injured employee. They then returned to the court house and recorded the deeds in which the property was transferred as heretofore noted. Plaintiff was not named as a grantee of any of the property. As a part of this transaction, upon the attorney's advice, the son and daughter named as grantees executed an instrument establishing a life estate in the property in their mother.

In 1944 the mother brought an action against these two children-grantees to recover this property. That action was predicated upon the mother's contention and testimony that she had conveyed the property upon a promise by them to reconvey to her when the threat of a damage suit against her by the injured employee no longer existed. The judgment against the mother in that action was affirmed upon appeal to this court. See Anderson v. Anderson, 197 Okl. 635, 173 P.2d 947, 949, for a more detailed factual statement of the background of this action. The plaintiff in this action was not a party in that action but testified as a witness for the grantees. As we noted in our opinion, the testimony in that case disclosed that the mother "* * * seems to have (had) a clearly expressed desire that Pearl (this plaintiff) was to have none of the lands; * * *" even though she may have originally prepared one of the deeds with this daughter as grantee. Pearl claimed no interest in the property in that action, and the judgment was that the grantees received the property free from any trust in favor of their mother.

To establish the trust in her favor plaintiff relies on the following additional testimony: by a cousin (and objected to as hearsay) that in 1935 the mother of plaintiff told her that she was dividing her property among her children share and share alike with "Pearl to have the home place"; by an attorney who was employed by the firm which represented Katherine in the action by her mother that he was present at a meeting at which the defendant stated that she had been conveyed this property by her mother and that she held it for herself and her brother and sister with whom she was going to divide it "when the occasion arose"; by the attorney who personally represented Katherine

in the first case and who represents the plaintiff in this action, that the defendant told him, in the course of preparation for the first case, that the land was to be held by her until her mother's death, at which time she was to divide it equally among the three children, and that her mother had conveyed it to her "in that arrangement" because she was single and no problems with a spouse could arise; by the same attorney, that after the first action the defendant had him prepare a trust agreement to effectuate the division of the property, but that defendant never executed the contract after he prepared it because she said it might be necessary to use the property to provide money with which to care for their mother; by the attorney with whom the mother had consulted prior to recording the deeds, that her purpose had been to avoid the consequences of a judgment, that the property was to have been returned to her and that she knew Pearl was not named as a grantee for, as she told him "* * * she (Pearl) has a deed of her own * *"; and, by a handwriting expert witness, that defendant's name had been written over an erasure on two deeds by use of a typewriter with different type to that in the remainder of the deeds.

Plaintiff testified in her own behalf that when the deeds were removed from the bank by her mother to be recorded "Katherine told me that Mama didn't have a deed for me"; that she (plaintiff) never saw the deeds; that her mother said something about Katherine "going to make it back in two years" and noted that Katherine had no "in-laws to interfere"; that "I come to find out at the court house that I didn't have a deed" but that her mother told her "Katherine would take care of all that"; that her mother "got out of the notion and she didn't want my name on the deed after I got here—she decided she didn't want any name on the deed"; "that Katherine always told me she would deed my part to me." On cross-examination plaintiff acknowledged that in the action between her mother and sister she had testified: that no part of the land was deeded to her; that her mother "didn't see fit to have it put in my name"; that "she didn't want me to have any"; that "this was on her (her mother's) insistence"; that when her brother discovered that she was not a grantee, "he didn't like it and he wouldn't have anything more to do with it"; that she did not hear any conversation by her mother at the time she recorded the deeds to the effect that "she was merely deeding the land to Katherine until the danger · * * * of an action against her was past" and that the deeds were drawn "the way my Mother wanted."

The mother of these parties was not able to testify at this trial, but by agreement plaintiff caused certain portions of her testimony in the other action to be introduced in this case. Her testimony there was that the property was supposed to return to her after two years. In addition, the following questions elicited from her the accompanying responses:

"Q. At that time that is the way you wanted the land to go; that is the way you wanted it divided? A. Yes, I guess it was by me making the four deeds.

"* * * * * *

"Q. And you wanted at that time, this land to go just like you had it divided in those deeds, didn't you? A. Then, it was."

■ We may conclude, arguendo, that that this evidence establishes the requisite confidential relationship upon which to base a constructive trust against the grantees; nevertheless, we are of the opinion that the judgment must be affirmed. Unquestionably, there is some evidence which tends to establish that plaintiff's mother conveyed this property upon the condition that it would be divided with the plaintiff. Yet such evidence does not come from the grantor, whose testimony in the other action fails to suggest the possibility. Indeed, quite the converse

would be the fair purport of her testimony. Too, the fact that the mother conveyed a part of her property to each of her children except plaintiff is at least as eloquent as any of the oral testimony offered. This undisputed fact, coupled with the testimony of the mother, is strong evidence contrary to plaintiff's contention. And it seems almost superfluous to point out that the pivotal period is the time the deeds were delivered, not the year 1935 or the time subsequent to the delivery of the deeds when the grantor's desire may have been altered by different circumstances. Of course, evidence of her intent at another time is admissible, but it is so only for the purpose of ascertaining her intent during the pivotal moment. The trial judge pointed out in his remarks while ruling upon the demurrer the character of evidence required to establish the trust, and continued by specifically noting that plaintiff had failed to meet the burden of proof cast upon her even though he had given plaintiff every opportunity to show all the facts by permitting "even hearsay evidence." In view of the trial court's more advantageous position to weigh the evidence in relation to the character of proof required to establish the trust, its conclusion on the weight to be accorded the plaintiff's testimony is not to be considered lightly.

The evidence most strongly supporting the plaintiff's contention came from plaintiff and her attorney. As we pointed out in the recitation of facts, however, plaintiff's testimony now does not agree with her testimony in the other action in several material respects. Parenthetically, we note that the trial judge and this court on appeal in that case remarked on the unusual circumstance, as it appeared at that time, that plaintiff had no interest in the property and, moreover, that she claimed no interest. The testimony of plaintiff's attorney related statements of defendant in the nature of admissions against interest which were made to him as her attorney in the first action. He did not purport to testify concerning the grantor's intent upon delivery of the deeds other than as it was related to him by defendant some years after delivery of the deeds. Yet, his testimony of defendant's statements to him is contrary to defendant's written pleadings in that action in which she asserted that plaintiff "received no part in the division of lands and gifts," but instead was present and "acquiesced in the division and gifts so made" by their mother. It also appears that this attorney has a contingent fee contract with plaintiff in this action. The testimony of the other witnesses does not compel the conclusion contended for since it is equivocal in nature on this point and is consistent with other logical conclusions, as, for example, affection by a favored sister for one who has not been treated fairly by their mother in the distribution of her property.

■ We pointed out in the last paragraph of the syllabus of Colbourn v. Bell, supra [294 P.2d 290]:

"When the plaintiff has introduced all of his testimony and rested, if, upon consideration of all such testimony, the court is of the opinion that the defendant should prevail, it would be an idle thing to require the defendant to introduce further testimony to uphold a case he had already won."

Because of the many factors involved in a weighing of testimony which cannot be incorporated in a case-made, this court will not disturb the conclusion of a trial court on the evidence unless we can state that its conclusion is clearly against the weight of the evidence. Here, this trial court's specifically stated conclusion in its judgment was that plaintiff had failed to establish the fact by "clear, cogent and convincing, clear satisfactory and convincing, clear, unequivocal and decisive, and clear, strong and unequivocal evidence." In view of the requisite proof in an action of this nature, we are not convinced from our close examination of the record

that the evidence offered by plaintiff is such that the trial court's conclusion can be said to be clearly against the weight of that evidence.

The judgment is affirmed.

The Court acknowledges the aid of the Supreme Court Commission in the preparation of this opinion. After a tentative opinion was written by the Commission, the cause was assigned to a Justice of this Court. Thereafter, upon report and consideration in conference, the foregoing opinion was adopted by the Court.

CORN, V. C. J., and DAVISON, HALLEY, JOHNSON, WILLIAMS, JACKSON and CARLILE, JJ., concur.